HAZEL OLSON v. DAHLIN JONES ELECTRIC COMPANY
AND ANOTHER.[1]

January 5, 1934.

No. 29,612.

[1]Reported in 252 N. W. 78.

 

*Edgerton, Dohs & Edgerton,* for relator.
*Gillette & Meagher,* for respondents.

HOLT, Justice.

Certiorari to review a decision of the industrial commission denying relator compensation.

Sam Olson, while in the employ of respondent Dahlin Jones Electric Company on May 13, 1932, was killed in an accident arising out of and in the course of his employment. He left surviving relator, his wife. He left no child. The referee awarded compensation. On appeal to the industrial commission the findings and award were vacated and this finding made:

"That said employe left surviving him his wife, Hazel Olson; that at the time of the injury and death of said employe his said wife was, and for more than three years immediately prior thereto had been, voluntarily living apart from her husband, the said decedent."

Consequently she was denied compensation; and $200 was awarded the special compensation fund.

The assignments of error go to that part of the quoted finding which declares that relator was "voluntarily living apart" from her husband at the time the accident befell him. Error is also assigned on the refusal to grant a rehearing.

The record presents a peculiar domestic situation. Relator and decedent were married in 1906. They lived together for 22 years, the last few years thereof in their own home in St. Paul. They had no children, and the wife earned some money as a waitress, working part time in restaurants. During 1927 and 1928 the husband had difficulty in finding employment. In June, 1928, the wife had the opportunity to go to Yellowstone Park as a waitress in a park hotel. She accepted the offer, apparently without objection from the husband. She returned to St. Paul in September. Thereafter and

during 1929 there was scarcely any communication between the two. From 1929 on until the husband's death they met frequently on friendly terms. Relator at times did some washing for her husband and cooked some meals for him when she visited where he roomed. Shortly before his death he invited her to dinner at a hotel, went to a movie with her, and then took her home in a taxi. She claims that the reason they parted in 1928 was solely because of his financial straits. The home was mortgaged, he had had no work for some time, and was unable to meet the payments on the mortgage on the home or to pay the delinquent taxes thereon. So they had to break up housekeeping and sell the home. Relator signed the deed. Something less than $1,200 remained after payment of the encumbrances. Of this relator received $400 and the husband the balance. There is no evidence that either asked the other for money thereafter; nor does she tell what she did with the $400 she had received when the home was sold, nor what she did with her earnings. After 1929 the two called on their friends together and acted the part of man and wife on such calls. There is in the alleged newly discovered evidence a letter from relator to her husband, written shortly before the accident, wherein she suggested that he give her some money to repair her car. Affidavits are also produced from a number of persons to show friendly relations between the two and a desire to live together in the near future.

1 Mason Minn. St. 1927, § 4275, declares that a wife is conclusively presumed to be wholly dependent "unless it be shown that she was voluntarily living apart from her husband at the time of his injury or death." So to escape paying compensation in this case the employer was required to prove that relator voluntarily lived apart from her husband. Whether a wife is in fact living apart is easy of proof. The evidence is here conclusive that for almost four years prior to the death of the husband relator lived apart from him. But that fact does not exclude her from compensation. It must be shown that the living apart was a voluntary choice on her part. This is more difficult because it depends chiefly on the state of mind of the wife—her intention. There may be ex-

traneous circumstances beyond her control that force her to live apart from him. State ex rel. George J. Grant Const. Co. v. District Court, 137 Minn. 283, 163 N. W. 509. If such be the case it would justify the triers of fact to find that she was not voluntarily living apart from him. She had made a statement that domestic difficulty was the cause of their living apart. Now she claims it was financial straits due to the husband's inability to find work. It would not seem that either cause is decisive. In the case cited it said the statute should be construed to mean [137 Minn. 285] "the free and intentional act of the wife uninfluenced by extraneous causes." Did any extraneous cause so influence relator to live apart from her husband that she might be said to not so live voluntarily. If her living apart was because her affection for him had vanished, that would not be from an extraneous cause. Assuming her testimony to be true that there was no domestic difficulty that caused the couple to break up housekeeping in June, 1928, was their financial situation such that the ordinary wife could be said to have been influenced thereby to live apart from her husband during all the time up to his death on May 13, 1932? Each had some money when the home was sold. She earned good wages at times, and the record also tends to show that he did. True, the months she was at Yellowstone Park and at the Somerset Golf Club she had to live apart from him, and perhaps also when she served as a domestic. But the record furnishes no picture of financial stress that should influence an ordinary wife, in good health, to live apart from her husband for almost four years. We think it was a question of pure fact for the commission to determine whether she voluntarily lived apart from him. It was so considered in State ex rel. London & L. Ind. Co. v. District Court, 139 Minn. 409, 166 N. W. 772; State ex rel. Kile v. District Court, 146 Minn. 59, 177 N. W. 934; Hinchuk v. Swift & Co. 149 Minn. 1, 182 N. W. 622; Conway v. County of Todd, 187 Minn. 223, 244 N. W. 807. Under these decisions the evidence, even with that called newly discovered, does not compel a finding contrary to the one made by the commission. There is no suggestion from her that he was unwilling to use the money realized from the sale of their home and household

goods for their support, living together. Of course, if because of his unwillingness, misconduct, or inability to support her she was forced to live apart from him, it should not have been found that such living apart was voluntary. Such a case was Cambria Coal Co. v. Daugherty, 161 Tenn. 457, 33 S. W. (2d) 71, cited by relator.

Error is assigned on the refusal of the commission to grant a rehearing on the ground of newly discovered evidence. As we see it, this evidence is merely cumulative as to evidentiary facts that are not in dispute, that is, that the parties looked forward to a time when they might again live together. But that aside, the granting of a rehearing rests with the commission, except where it appears that judicial discretion has been abused. Ogrosky v. Commonwealth Elec. Co. 172 Minn. 46, 214 N. W. 765. In the case at bar there was no such reason for granting a rehearing as was found in Kallgren v. C. W. Lunquist Co. 172 Minn. 489, 216 N. W. 241.

The decision of the industrial commission is affirmed.

OLSEN, Justice (dissenting).

In view of the facts that because of financial troubles and decedent's unemployment it was necessary for the parties to sell their interest in the house they had occupied, that thereafter the husband, as far as appears, provided no home for them in which to live, that the wife had to seek employment, and from time to time was employed in domestic service, or other service which required her living at the place of service, that at the time of the husband's death she was employed at the Somerset club some distance out from the city, it seems that the commission may have failed to give sufficient consideration to material parts of the evidence before the referee. The case should be sent back to the commission for rehearing. The fact that the wife did not go into more detail in reference to their financial troubles is not of great weight.

DEVANEY, Chief Justice, and LORING, Justice (dissenting).
We concur in the views expressed by Mr. Justice Olsen.