# ELLA WESTERENG v. CITY OF MORRIS AND ANOTHER.[1]

April 28, 1939.

No. 31,991.

*C. A. Stark, M. O. Updegraff,* and *O. K. Alger,* for relators.
*T. J. Mangan,* for respondent.

JULIUS J. OLSON, JUSTICE.

*Certiorari* brings for review an order of the industrial commission granting petitioner compensation as the surviving wife of John E.

[1]Reported in 285 N. W. 717.

Westereng, who was immediately prior to his death an employe of relator city.

There is no question about decedent's employment nor that he suffered an injury in the course of his employment on December 19, 1936. On that day he was on the ground shaking snow out of a decorative wreath that had been hung above the city's main street. One of the workmen was on an 18-foot ladder held by two other workmen. The top of the ladder was leaning against a cable strung across the street. The man on the ladder in some fashion cut a wire attaching a wreath to the cable. The ladder slipped and fell, striking decedent's head and causing a scalp wound from which there was a flow of blood. He was helped to a doctor's office where the wound was treated, and returned for further treatment on the 21st and 24th. His usual employment continued until January 19, 1937, although his capacity to work was perceptibly impaired as time went on. Since his injury he complained of pain in his head, progressively became worse, "was not like himself," grew "very weak and very thin and it seemed like he was dizzy and he could not walk, he just staggered from side to side." On January 31 his condition was such that hospitalization became imperative. He died there February 28. Shortly thereafter petitioner filed her petition for compensation claiming that her husband's death was due to the accident suffered on December 19. The referee found for her, and the usual appeal was taken by the employer and its insurer to the industrial commission.

After many hearings the issues have narrowed down to the single one of whether the record sustains the finding of causal connection between the injury received in the mentioned accident and Westereng's death. It has for its real basis the testimony of medical experts. An autopsy was had at which petitioner's experts were present as was also relators'. Three doctors, all men of experience and ability, testified for petitioner. A pathologist of unquestioned capacity testified for relators. The commission before rendering its decision—

"deemed it advisable to appoint a neutral pathologist [pursuant to 1 Mason Minn. St. 1927, § 4283] to review the entire record of testimony and to study the slides of sections taken from the brain and spinal cord of this deceased employe at the autopsy, and to report his findings and opinion, with particular reference to the question of what, if any, causal relationship there may have been between the death of Westereng and the accidental injury he sustained."

The neutral pathologist duly made and reported his findings and opinion that—

"the primary cause of death was torulosis, involving the central nervous system, and that the disease was present prior to the time of the injury, * * *" Due to "the fact that the development and advance of the disease is dependent upon the immunity of the individual; because there is reasonable evidence to show that there was trauma to the brain; because trauma can produce situations similar to those which favor the growth of the organisms, and thus disturb the balance against any prior resistance; and because of the sudden appearance of symptoms following the trauma in an individual supposedly previously well, it is my opinion that there exists a reasonable probability that the injury aggravated the disease."

The three doctors testifying for petitioner, while not claiming to be expert pathologists, were unanimously of opinion that the accident aggravated a preëxisting condition to such a degree that the employe's death was attributable thereto. Relators' pathologist was emphatically of the opposite view; that the employe died as a result of torulosis (a very rare and unusual disease) and that the accident in no way contributed to the employe's death. This disease is so extremely rare that less than 60 cases have been recorded in medical history. Freely conceded is the further fact that the actual experience of all of them was limited to this particular instance.

We may grant relators' claim that their expert is exceptionally qualified, but that does not permit us to cast aside the opinions of

the others. After all, it was for the triers of fact to determine what must be, in its very nature, a fact issue. Our duty as a court of review is necessarily limited to a determination of whether there is sufficient evidence in the record to sustain the result reached by the commission.

■ It may be conceded that Westereng's disease was present in his body at and prior to the time of accident. That, however, is not conclusive against the finding of liability since the compensation act "does not apply to those only who are strong in body" nor "to those only who are normal. * * * It does not exclude the weak or physically unfortunate. Latent and unknown tendencies to disease are common and the legislature in passing this law must have had in mind the fact that such latent ailments or maladies may develop into serious conditions if incited to activity because of what might otherwise be regarded as trivial accidental injuries in the course of employment." And so here, "an actual aggravation of an existing infirmity caused by an accident in the course of employment is compensable, even though the accident would have caused no injury to a normal person." If the employe's infirmity was in fact "accelerated by the injuries" to his head, his widow "should recover. Compensation would follow, not on the theory that the injuries caused the malady or disease—that was already present—but because of the effect of such injuries upon the disease." Walker v. Minnesota Steel Co. 167 Minn. 475, 476, 477, 209 N. W. 635, 636.

■ The opinions of experts are admitted "in order to assist a jury [or other trier of facts] in arriving at the truth, and such evidence is admissible whenever the subject matter of the inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance." Wyatt v. Wyett, 200 Minn. 106, 110, 273 N. W. 600, 601. And in this case as in the one just cited:

"To say that expert opinion is admissible only because lay minds cannot form a correct judgment of the subject because of ignorance, and then to expect the same lay minds which the expert testimony is to assist to determine a highly technical, controversial question

involving that subject, each side of the controversy militantly supported by well qualified experts, seems to us an absurdity." *Id.*

While this case like the one just cited may be on the "border line," nevertheless we think that petitioner's "doctors appear to be sincere, and their opinions are not so inconsistent with reason and common sense as to justify us in rejecting them \* \* \*." *Id.*

■ A careful reading of the entire record convinces us that a fact issue was presented and, having been determined against relators, that it is binding upon us. This is so because "a finding upon a question of fact cannot be disturbed unless consideration of the evidence and the inferences permissible therefrom clearly require reasonable minds to adopt a conclusion contrary to the one at which the commission arrived." Jones v. Excelsior Laundry Co. 183 Minn. 531, 532, 237 N. W. 419.

The writ is discharged and order affirmed.

Respondent will recover $100 attorney's fees plus statutory costs and disbursements.

STONE, JUSTICE (dissenting).

While the generalizations concerning expert testimony, upon which this decision is in part based, are correct, the fact remains that opinion evidence based upon conjecture, as distinguished from inference, is no evidence at all for the affirmative of the issue. It is therefore an inescapable duty for the triers of fact to distinguish, in the field of opinion testimony, between mere conjecture on the one hand and real inference on the other.

Whether that has been done in this case it is impossible for me to say. The motivation of the decision of the majority of the industrial commission (Commissioner Debel dissenting) is thus expressed:

"The neutral pathologist having testified that there is a reasonable probability of the accident causing death, we feel it incumbent upon us to resolve any doubt herein in favor of the petitioner."

So, assuming that the expert opinion mentioned is enough to sustain decision for the affirmative, that decision is based explicitly

upon the resolution of admitted doubt for the affirmative of the issue. That leads me to suspect that even the majority of the commission found the evidence in such balance that they were in doubt which way to decide, and came to decision upon the erroneous notion that it was their duty in such a predicament to decide for petitioner.

If the evidence was considered in balance, decision should have been for the negative of the issue. To my mind there is so much indication that an erroneous view of the law was entertained by the majority of the commission that the interests of justice require that the case be remanded with instructions for an explicit finding either that the evidence does or does not preponderate in favor of petitioner.

Mr. Justice Hilton, incapacitated by illness, took no part.