## ALF M. BOXRUD AND OTHERS v. RONNING MACHINERY COMPANY AND OTHERS.[1]

June 9, 1944.

No. 33,623.

[1]Reported in 15 N. W. (2d) 112.

*George Harold Smith, V. J. Hermel, Thompson, Hessian & Fletcher,* and *Guesmer, Carson & MacGregor,* for appellants.

*Fowler, Youngquist, Furber, Taney & Johnson, G. A. Youngquist,* and *J. B. Clarkson,* for respondents.

JULIUS J. OLSON, JUSTICE.

Suit by minority stockholders, "on their own behalf and on behalf of all owners of the capital stock of the defendant company," for an accounting by the individual defendants of certain royalties alleged to belong to the corporation but which had been wrongfully collected and retained by the individual defendants; for judgment against the latter in favor of the corporate defendant for the amount so found to have been received and retained; and for the appointment of a receiver to aid in the accomplishment of these objects.

The corporation was duly served with process, as were Adolph, Jacob A., and Tilda L. Ronning. Each defendant answered separately. The corporation pleaded the general issue. The individual defendants denied all allegations of wrongdoing on their part and also pleaded laches and the statute of limitations. As to defendants not served, the court concluded that it had "no jurisdiction," so they are in no way involved in the litigation.

There was a lengthy and thorough trial, begun November 12, 1942, and concluded January 12, 1943. The printed record of 810 pages, together with numerous exhibits, not printed, demonstrates that plaintiffs' counsel were very thorough, and there can be no doubt that they left nothing unsaid to establish their clients' cause. We are grateful to counsel for their care, industry, and thoroughness

in pointing out the places in the record and the various exhibits where one may go to find the facts.

When plaintiffs rested, the individual defendants did likewise, and all moved for "findings of fact, conclusions of law and order for judgment" in their favor on the merits. The court thought that there was no likelihood that anything more of value would be made available in addition to that already adduced in plaintiffs' behalf. Full and exhaustive findings were made. These, with the memorandum, comprise pages 691 to 714 of the record. In its findings the court completely exonerated defendants of all charges of "fraud, misrepresentation or concealment." In his memorandum, the judge expressed the opinion "that the plaintiffs wholly failed to establish prima facie that they or the defendant corporation or its stockholders ever had a cause of action against the individual defendants or any of them."

Plaintiffs moved in the alternative for amended findings or a new trial. That motion being denied, they appeal.

■ This case, in principle, is much like Diedrick v. Helm, 217 Minn. 483, 14 N. W. (2d) 913, the first syllabus paragraph of which states the law that is to guide us in our consideration and decision here. It reads:

"Where a business opportunity is in the line of a corporation's activities, especially if intended for it, the opportunity, as one in which it has a legitimate interest or expectancy, belongs to the corporation and not to its officers or directors, and if an officer or director diverts the opportunity and embraces it as his own, he is chargeable as a constructive trustee for the benefit of the corporation with all the profits and benefits received therefrom by him; but, where the opportunity is one in which the corporation has no interest or expectancy, the opportunity is not a corporate, but a personal, one, and belongs to the director, with the right to treat it as his own." (The opinion cites and discusses many cases under this headnote.)

Certain additional facts may be helpful. Adolph and Andrean G. Ronning were brothers. Andrean died testate October 20, 1927.

His will was duly admitted to probate in Hennepin county and a final decree issued on November 19, 1940. The individual defendants, aside from Adolph, are the beneficiaries under his will or have taken as his heirs at law.

Adolph and Andrean were born and raised on a Minnesota farm. Both were capable men, possessed of practical and inventive minds, especially in relation to farm equipment and machinery. They had so far succeeded in their inventions and applications for patents that in 1915 they formed the predecessor of the present corporation for the purpose of putting their inventions to practical use. In consideration for the stock issued to them, they transferred to the newly formed corporation their patents, applications for patents, and other similar rights. Later there were other patents and patent rights procured by them. They have owned a majority of the corporate stock at all times since the first corporation was created.

This suit has for its foundation a large sum of money received as royalties by the Ronnings under what is referred to in the record as the Farm-All Contract. This was entered into in May 1926 and is referred to in the record as exhibit "B." This contract provided that the Ronnings should receive $25,000 in cash as advance royalties and the payment of all future royalties. The important, in fact controlling, fact issue presented is whether the Ronnings dealt honestly and in good faith with the corporate defendant in 1920, when there was an exchange and division made between the corporation and the Ronnings of certain rights arising by virtue of that contract. The court found that this transaction was entered into in good faith, upon full disclosure of all relevant facts, and for an adequate consideration. If the record sustains that finding, obviously there is an end to our inquiry.

In addition to what has been noted, and as heavily bearing upon and having a direct relation to the main issue discussed, we think it is well worth while further to discuss other and additional findings. We shall refer to these by inserting parenthetically the number of the finding as identified by the trial court. While the Ronnings were at all times possessed of "a majority of the voting power

of the stock" of defendant corporation, they "did not at any time dominate or attempt to dominate the direction, management, business or affairs of said defendant * * * which was at all times under the active control, direction, and management of its board of directors," a majority of which "at all times consisted of persons other than said" Ronnings (IX). On January 13, 1920, the stockholders, by unanimous vote, adopted a resolution authorizing and directing the board of directors to enter into the particular contract of reassignment, transfer, and "exchange" of the respective rights of the parties (the Ronnings and the corporation) so that thereby to the Ronnings should go all corporate interests in the patents and patent rights in the so-called Farm-All tractor invention, with all attachments, etc., thereto appertaining. In exchange, the Ronnings transferred to the corporation certain other patents and patent rights, all as in the resolution fully described (X). This resolution was later considered and acted upon by the directors on January 19, 1920, and "at several subsequent meetings." On that day the contract authorized by the resolution (plaintiffs' exhibit B-143) was entered into (XI). This agreement was approved by the stockholders on January 10, 1922 (XIII). On May 1, 1926, the Ronnings entered into the Farm-All Contract (exhibit B) with the International Harvester Company. It is the income from this invention and the royalties derived therefrom that gave rise to the present controversy (XIX). "There was no fraud, misrepresentation, concealment, conspiracy or other wrongdoing committed by or on behalf" of the Ronnings in respect to any of the contracts. And (XX), "For more than fifteen (15) years prior to the commencement of this action," said the court, defendant's "board of directors and its officers * * * had notice and knowledge of the existence and terms" of all contracts mentioned and, further, that the corporate "stockholders as a class * * * had notice and knowledge of the existence and terms" of these contracts. Yet never, during all of said period and until this suit was brought in 1942, did any one question "the validity of any of the contracts," nor did any one during this period question "the validity of any of the transac-

tions alleged in the complaint." Therefore, concluded the court (XXII), "There has been [such] unreasonable, unexcused and unjustified delay * * * in seeking to assert" the present cause as to make laches operative as a bar, and that said period of delay has also made operative (XXIII) the six-year statute of limitations.

Additional findings might well be included in this résumé, but we think enough has been said to obviate further recitals.

■ It is not for this court to examine and consider as original questions here the fact issues presented. These were for the trial court, not for us. That duty the trier of fact has performed with thorough and painstaking care. Its findings are well sustained by the record. The difficulty of finding and producing sufficient evidence to sustain plaintiffs' cause does not do away with the necessity of furnishing it. Mere accusations without proof do not help plaintiffs. They are in the same situation as are other litigants who have similarly failed. Plaintiffs, while right in their theory of applicable law, have failed to bring out the facts necessary to make their legal theory operative.

Order affirmed.