ANTONIJA BABURIC v. BUTLER BROTHERS.[1]

March 2, 1951.

No. 35,333.

[1]Reported in 46 N. W. (2d) 661.

*Thos. H. Strizich,* for relator.

*Doherty, Rumble, Butler & Mitchell* and *Frank Claybourne,* for respondent.

KNUTSON, JUSTICE.

Certiorari to review a decision of the industrial commission denying compensation to the widow of a deceased employe.

Martin Baburic, the employe, was born May 16, 1882, in what was then a part of the Austria-Hungary empire and is now a part of Yugoslavia. He was married on November 25, 1908, to claimant, Antonija Milinkovic. Martin came to the United States about two years later, in 1910, and never returned to his native land. His wife remained behind and has never been in this country. It is conceded that they have never been divorced. Martin came directly to the Iron Range country in this state and worked at a number of jobs over the years, his employment being somewhat irregular at times, particularly during the depression. He was killed accidentally while working for respondent on October 3, 1947. At that time he had been employed by respondent for about five years.

During the years that Martin was in this state he corresponded with his wife quite regularly. His brother-in-law, Tomo Milinkovic, who worked in the same locality, testified that Martin had always planned on returning to his native land. During 1938 and 1939, he sent his wife about $300 for the purpose of building a home. After World War II, he sent her clothing and food in packages having a value of about $400. One package was sent at Easter time in 1946, another at Christmas time of the same year, a third for Easter 1947, and another in July of that year. He sent her small amounts of money. The record does not show what, if anything, he had sent her prior to the war. He carried a group life insurance policy with his employer in which his wife was named as beneficiary, and she was paid the face amount of the policy after his death. He was a participant also in a profit-sharing plan which respondent had for its employes, and in this he named his brother-in-law as beneficiary of the benefits to accrue.

At the time of his death Martin earned $1.09 per hour. During the years he worked for respondent he earned the following amounts: 1943, $1,228.27; 1944, $1,806.66; 1945, $1,671.56; 1946, $1,012.70;

and 1947, $1,086.65. It is apparent from these earnings that his work was not steady.

The review here involves principally the application of certain statutory provisions. M. S. A. 176.12, subd. 1, reads:

"For the purpose of this chapter, the following described persons shall be conclusively presumed to be wholly dependent: (a) wife, unless it be shown that she was voluntarily living apart from her husband at the time of his injury or death; * * *."

Subd. 3 reads:

"Wife, child, husband, mother, father, grandmother, grandfather, grandchild, sister, brother, mother-in-law, father-in-law, who were wholly supported by the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto, shall be considered his actual dependents, and payment of compensation shall be made to them in the order named;"

Subd. 4 reads:

"Any member of a class named in subdivision 3, who regularly derived part of his support from the wages of the deceased workman at the time of his death and for a reasonable period of time immediately prior thereto, shall be considered his partial dependent, and payment of compensation shall be made to such dependents in the order named;"

The referee found for claimant. On appeal, the industrial commission reversed, holding that at the time of employe's death the claimant was voluntarily living apart from her husband and that she was receiving no support from him at that time or for a reasonable time preceding his death. Our review involves a determination of the correctness of these conclusions. If either conclusion is wrong, there must be a reversal.

Whether the parties were voluntarily living apart is a question of fact. Hinchuk v. Swift & Co. 149 Minn. 1, 182 N. W. 622. So, too, is the question whether the wife was wholly or partially supported by her husband.

■ We have so often stated the rule that a finding of the commission on a question of fact cannot be disturbed unless consideration of the evidence and the inferences permissible therefrom clearly require reasonable minds to adopt a conclusion contrary to the one at which the commission arrived (Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419; Westereng v. City of Morris, 205 Minn. 219, 285 N. W. 717; 6 Dunnell, Dig. & Supp. § 10426) that it seems useless to reiterate the rule.

■ The burden rests on the party asserting voluntary separation to prove it. State ex rel. George J. Grant Const. Co. v. District Court, 137 Minn. 283, 163 N. W. 509; Kolundjija v. Hanna Ore Min. Co. 155 Minn. 176, 193 N. W. 163.

■ In the George J. Grant Const. Co. case, we defined *voluntary separation* thus (137 Minn. 285, 163 N. W. 509):

"* * * the expression 'voluntarily living apart from her husband,' as used in this statute means, and should be construed to mean, the free and intentional act of the wife uninfluenced by extraneous causes or, as it might be otherwise expressed, her choice deliberately made and acted upon. 29 Am. & Eng. Enc. (2d ed.) 1072."

In Conway v. County of Todd, 187 Minn. 223, 225, 244 N. W. 807, 808, where we refused to recede from the above construction of the term *voluntary separation,* we said:

"It is insisted that the expression 'uninfluenced by extraneous causes' be eliminated as importing a meaning not to be found in the word 'voluntarily.' This we must decline to do. Extraneous causes or conditions often force one to act contrary to one's wishes or desires. Lack of means or health may forbid a wife to follow her husband to a new place when he is unable to provide her with food or proper shelter."

See, also, State ex rel. London & L. Ind. Co. v. District Court, 139 Minn. 409, 166 N. W. 772; Annotations, 13 A. L. R. 710 and 30 A. L. R. 1268.

The Tennessee statute is identical with ours. In Partee v. Memphis Concrete Pipe Co. 155 Tenn. 441, 295 S. W. 68, the definition given in our case of State ex rel. George J. Grant Const. Co. v. District Court, *supra,* is cited with approval. The Partee case was followed in the later Tennessee case of Cambria Coal Co. v. Daugherty, 161 Tenn. 457, 33 S. W. (2d) 71.

The statute in Wisconsin is slightly different from ours, but the import is much the same. It provides that dependency shall be conclusively presumed in the case of "A wife upon a husband with whom she is living at the time of his death." In Northwestern Iron Co. v. Industrial Comm. 154 Wis. 97, 101, 142 N. W. 271, 272, L. R. A. 1916A, 366, the facts are strikingly similar to those in the case before us, except that the employe there had been gone from his native country of Austro-Hungary for only about three years and three months. In construing the Wisconsin statute, the court said:

"* * * It seems, therefore, quite obvious that the legislature intended by the use of the words to include all cases where there is no legal or actual severance of the marital relation, though there may be physical separation of the parties by time and distance. The 'living together' contemplated by the statute, we think, was intended to cover cases where no break in the marriage relation existed, and therefore physical dwelling together is not necessary in order to bring the parties within the words 'living together.' There must be a legal separation or an actual separation in the nature of an estrangement, else there is a 'living together' within the meaning of the statute. * * *

\* \* \* \* \*

"* * * The question does not turn on time or distance, but upon the nature and character of the absence and the intention of the parties respecting it. Intent is an important element in determining the nature of absence."

Respondent has offered no evidence to sustain its burden of proving that the parties were voluntarily living apart, except the

lapse of time during which they were separated and the amount of money the employe had earned, seeking to draw therefrom an inference that the wife had the opportunity to come here and that the husband had earned enough to send her transportation, but that they had not chosen to have her do so. It may be that in a proper case a lapse of time, with no explanation for it, might justify an inference that the separation was voluntary. However, in this case the evidence shows that the parties kept up a correspondence with each other during all these years; that the wife wanted the husband to return; and that such was his intention, at least during a large part of the time they were separated. During two intervals, this country and the native country of the parties were involved in World War I and World War II. During those times, it was not only impossible for the parties to get together, but it was well nigh impossible for them to keep in touch with each other. As soon as it became possible after World War II, the husband again communicated with his wife, and, having ascertained that she would prefer to have food and clothing to money, proceeded to send her such in no small amount, considering the limited annual earnings of the husband. The parties retained certain property in their native land. Under these circumstances, something more than the mere lapse of time is required to show that the wife's separation from her husband was voluntary on her part. Even desertion of the wife by the husband is not enough where she remains willing to have him come back to her. In order for the separation to be voluntary, the intent to live apart must exist on the part of the wife. We are of the opinion that there is no evidence in this case to establish such intent.

■ It may be conceded that in this case it is difficult for respondent to prove the intent of the wife. Difficulty in proving a fact does not relieve the party upon whom the burden rests of proving it. Nor does it shift the burden to the other party.

McGerty v. Nortz, 191 Minn. 443, 254 N. W. 601; Boxrud v. Ronning Machinery Co. 217 Minn. 518, 15 N. W. (2d) 112.

■ In view of the fact that respondent has failed to establish that the parties were voluntarily living apart, the conclusive presumption of dependency must prevail, and we need not determine whether the wife was actually wholly supported under § 176.12, subd. 3, or partially under subd. 4. Proof of dependency under these statutory provisions is dispensed with where the husband and wife are not voluntarily living apart.

The Michigan statute provides that a wife shall be conclusively presumed to be a dependent on her husband with whom she lived at the time of his death or from whom, at the time of his death, the department of labor and industry should find that the wife was living apart for justifiable cause or because he deserted her. In Martilla v. Quincy Min. Co. 221 Mich. 525, 191 N. W. 193, 30 A. L. R. 1249, the Michigan court held that where it appears that the wife is living apart from her husband for justifiable cause no issue of dependency in fact is to be tried out, even in a case where the wife has supported herself and has made no demand on her husband for support. See, Annotation, 30 A. L. R. 1268.

It must follow that, there being no proof sufficient to sustain a finding that the parties were voluntarily living apart, the conclusive presumption of dependency must prevail, and the decision of the industrial commission is reversed with instructions to reinstate the decision of the referee.

Relator is allowed $250 attorney's fees, plus statutory costs and disbursements.

Reversed.