VELMA COLE, Appellee,

*v.*

BEMIS BROTHERS BAG COMPANY, Appellant.

385 S.W.2d 103.

(*Jackson,* April Term, 1964.)

Opinion filed December 11, 1964.

ROGER MURRAY, JR., Jackson, for appellee.

SIDNEY W. SPRAGINS, SPRAGINS, MENZIES & SPRAGINS, Jackson, for appellant.

260

Mr. Justice White delivered the opinion of the Court.

This is a workmen's compensation case which was brought in the Chancery Court at Jackson by Velma Cole, as complainant or petitioner, against Bemis Brothers Bag Company.

The petitioner, appellee here, sued to obtain death benefits under the said Act as the surviving widow of Coy Cole, an employee of Bemis Brothers Bag Company, who died as a result of accidental injuries growing out of and in the course of his employment. The defendant's answer admitted that Cole was its employee at the time he received the fatal injuries and that said injuries did arise out of and in the course of his employment.

The answer, however, denied that the petitioner was the wife of said Cole at the time of his injury. However, it·was stipulated by the parties, at the trial, that petitioner was the lawful wife of Coy Cole.

The answer denied that Velma Cole was actually dependent upon Coy Cole at the time of his death, but on

the contrary, it was claimed in the answer that petitioner was voluntarily living apart from her husband and was not entitled to be presumed wholly dependent on him under T.C.A. sec. 50-1013(a) (1), and, therefore, she was not entitled to recover compensation as a dependent.

At the time it was further stipulated that the petitioner was not an actual partial dependent of the deceased employee, thus leaving as the only issue presented to the court the question of whether the petitioner was voluntarily living apart from her husband at the time of his death. The proof was confined to this issue alone.

The evidence showed that the petitioner and Coy Cole were married in 1941 and that they had one child, who was born before they were married. Said child a daughter, was 30 years of age at the time of said employee's death. Petitioner and the deceased lived together as husband and wife on Wiley Street in a community known as Eastport outside of Bemis, Tennessee, until the date of their separation in 1946. According to the proof of the petitioner, the reason for the separation was that the employee, from time to time, associated with another woman by the name of Louise Bell. Petitioner was jealous of Louise Bell and this was the source of frequent arguments between them, although there is no proof in the record of any illicit conduct between said employee and Louise Bell.

By reason of the conduct of the deceased, the petitioner decided she did not want to live with him any longer and in 1946, she left him and moved to Jackson, Tennessee. It is said in the brief filed on behalf of the Bag Company that the employee did not mistreat the petitioner and did not force her to leave him, but we are of the opinion that she may have felt that his conduct amounted to

mistreatment and that it was such as would reasonably force any wife to leave her husband.

The dispute over the employee's association with Louise Bell was the only domestic problem that ever existed between the deceased and the petitioner.

After the separation in 1946, the petitioner took a room by herself and continued to live alone until her husband died on October 23, 1963. From 1946 the daughter of the parties lived with the employee's brother and his wife and continued to live there until she was grown. During all of these years, and up until the employee's death, the petitioner wholly supported and cared for herself.

In the years that followed the separation, and up until his death, the deceased and the petitioner would see each other about once each month. Sometimes the deceased would visit the petitioner at her room in Jackson, Tennessee, and other times the petitioner would go to the employee's home in Bemis, Tennessee. They discussed from time to time living together again, but the petitioner insisted that the deceased move to another neighborhood before she would agree to a reconciliation.

According to the testimony of petitioner, she and her husband slept together one night in her room in Jackson, Tennessee, about one year prior to his death. At that time, and also about three weeks before deceased received his accidental injuries, he again asked the petitioner to return to him, but while she believed the employee was no longer associating with Louise Bell, she declined to do so. Her reason for not returning to her husband was that she did not want to live in the same neighborhood with Louise Bell and that if the employee would move to

another neighborhood she would return to him. She did say that she was satisfied with her living accommodations and chose to remain there of her own free will and, further, that her husband was willing, able, and would have supported her if she had returned to him.

Based upon the foregoing evidence, which is stated in the most favorable light to the contentions of the employer, the trial court found that the deceased-employee's association with Louise Bell was sufficient to justify the petitioner's withdrawal from him during all of the period in which he had associated with her. Further, her refusal to return to her husband unless he would move his home to another neighborhood was reasonable, and that, therefore, petitioner's living apart from the deceased was not voluntary.

Based upon the foregoing ruling, the court entered an order entitling the petitioner to recover of the defendant compensation at the rate of $28.17 per week, beginning with the day of her deceased-employee's death, on October 23, 1963, and continuing until the sum of $14,000.00 shall have been paid, or until the petitioner shall die or remarry.

The proof shows that the deceased and Louise Bell were seen together from time to time and that he paid her rent at least a part of the time.

It is said in the brief filed on her behalf that "the employee did not physically abuse the petitioner, but forced her to leave by placing unreasonable conditions upon her staying," that is, the condition of his associating with Louise Bell.

In the final decree entered in this cause on August 24, 1964, the chancellor said:

"* * * the Court is of the opinion that the petitioner was not voluntarily living apart from her husband for the reason that the deceased's conduct with another woman was sufficient to justify her withdrawal from his bed and board during all of the period in which the decedent associated with said woman. [Louise Bell]. The Court is of the further opinion that her refusal to return to her husband unless he would move from the neighborhood was reasonable under the circumstances, and would not have relieved him from the obligation to support petitioner.

"The Court further finds that the petitioner's living apart from her husband was not voluntary but was caused by the misconduct of the deceased."

■ The scope of our review here of a workmen's compensation case is limited to a search of the record only so far as is necessary to determine if there is material evidence to support the finding of the trial judge. *Anderson v. Volz Const. Co.*, 183 Tenn. 169, 191 S.W.2d 436 (1946).

In *Ward v. North American Rayon Corp.*, 211 Tenn. 535, 366 S.W.2d 134 (1963), we said:

"This being a workmen's compensation case, the Chancellor's findings of fact, if supported by any substantial evidence, are conclusive upon us—conclusive not only as to the credibility of the witnesses and the basic evidentiary facts, but also as to the inferences reasonably drawn from such facts." 211 Tenn. at 544, 366 S.W.2d 138.

The appellant, the employer, contends that we must look only to the conditions existing on the date of the employee's injuries, October 22, 1963, and no other time is

material to the issue to determine whether or not the wife was living voluntarily apart from her husband. If it is found that she was voluntarily living apart from her husband at the time of his injuries, then compensation is to be denied her.

T.C.A. sec 50-1013(1) provides that:

"A wife, unless it be shown that she was voluntarily living apart from her husband at the time of his injury, etc., shall be conclusively presumed to be wholly dependent."

In appellant's brief it is stated that the determinative time as to whether or not a wife is voluntarily living apart from her husband is "at the time of the injury" and not any time subsequent or prior thereto, and as said above, the court is bound to look to the conditions existing on the date of October 22, 1963, the date of the employee's injury, and no other time to determine this material issue.

The employer contends that about three weeks prior to the death of Cole, he requested petitioner to return to him, but she again refused, although the employee was willing and able to support her. Her reason for refusing these offers or reconciliation was that she did not want to live in the same neighborhood with the woman whom she had once suspected her husband of being familiar with. She was content where she was living and would consider rejoining the employee only if he would move from his long time place of abode to another area. These were the conditions existing at the time of the injury.

The brief of the appellant says further:

"That the petitioner was living apart from the employee at the time of his injury is obvious. The question is whether such was voluntary. The word 'voluntary'

as used in our statute with reference to a wife living apart from her husband has been construed to mean the free and intentional act of the wife uninfluenced by extraneous causes, or, otherwise expressed, her choice deliberately made and acted upon. *Partee v. Memphis Concrete Pipe Company,* 155 Tenn. 441 [295 S.W. 68]; [*State ex rel. George J.*] *Grant Construction Company v. District Court* [137 Minn. 283], 163 N.W. 509; *Baburic v. Butler Brothers* [233 Minn. 304], 46 N.W.2d 661. The Courts have recognized that there may be causes or conditions beyond the control of the wife which often force her to act contrary to the normal wishes and desires to live with her husband, such as unwillingness or inability to support, health, physical danger, or other misconduct. *Olson v. Dahlın Jones Electric Company* [190 Minn. 426], 252 N.W. 78, *Baburic v. Butler Brothers,* supra."

We agree that the question is whether or not the wife was living voluntarily apart from her husband at the time of his injuries and death, and we agree to the construction put on the word "voluntary" by the cited cases, but in deciding the case the chancellor applied the meaning of the word "voluntary" to the facts of the case and found, as stated above, that the wife's act in living apart from her husband was not voluntary, according to the usual definition of the word because it was "influenced by extraneous causes" as set out in *Partee v. Memphis Concrete Pipe Company,* supra.

▮ The chancellor held expressly that:

"* * * the petitioner's living apart from her husband was not voluntary, but was caused by the misconduct of the deceased."

It can readily be seen that the chancellor understood the meaning of the word "voluntary" and he applied it to the facts developed before him and found from those facts that the separation of the parties had been occasioned or brought about by the conduct of the deceased and that her absence from him was occasioned or caused by his association with Louise Bell. There is ample evidence in the record to support the finding of the chancellor to this effect, and under all of the authority we are bound by such conclusion and we are not at liberty to disturb it even if we were so inclined. We might say in passing that from our examination of the record, that the parties in all likelihood would have continued to live together but for the intervening influence of Louise Bell in their domestic affairs.

Therefore, the husband's conduct was such as to justify the petitioner in not living with him. We also agree with the chancellor in his holding that the wife's refusal to return to her husband unless he would move from the neighborhood (of Louise Bell) was reasonable under the circumstances.

We have given very careful consideration to this case, but we are unable to hold that the chancellor was in error in finding in favor of the petitioner on the facts presented in this case. Affirmed.

BURNETT, CHIEF JUSTICE, DYER and HOLMES, JUSTICES, and CLEMENT, SPECIAL JUSTICE, concur.