CONRAD v INDUSTRIAL COMM

Ohio Appeals, 2nd Dist., Montgomery Co.

No. 1462.    Decided Feb. 10, 1938.

George Becker, Dayton, for appellant.
Herbert S. Duffy, attorney general, Columbus; Nicholas F. Nolan, prosecuting attorney. Dayton, for appellee.

## OPINION

By GEIGER, J.

This cause is before this court upon appeal from an order and judgment of the Common Pleas Court of Montgomery County, sustaining a motion of the defendant for a directed verdict, on questions of law.

The matter had its inception in a petition filed by plaintiff against the Industrial Commission, in which he alleges that on the 10th day of June, 1935, he was in the employ of the Rike-Kumler Company of Dayton, Ohio, as an electrician and maintenance man; that on said day, while at work for said Company, and while in the course of his employment, he sustained a severe injury to the right side of his back in the region of the right sacro illiac joint, in attempting to assist another employee in lifting a cash register of the weight of 340 pounds from the close proximity of the floor to the platform of a truck of the heighth of about three feet, as an employee and in the furtherance of his duties; that he continued to work for the Company until August 12, 1935, at which time, his condition being acute, he was required to submit to medical treatment; that as a result of the injury and by reason thereof he has lost the use of both his right and left leg.

To this petition the defendant answers admitting that on June 10, 1935 plaintiff was in the employ of the Rike-Kumler Company, which had complied with the provisions of the Workmen's Compensation law; that he filed with the defendant an application for compensation and that proceedings were had as set forth in his petition. Defendant denies all allegations not admitted, and prays that the suit may be dismissed.

The cause came on for hearing before a jury and upon the transcript of evidence taken before the Commission on the final hearing of plaintiff's application. After the evidence had been introduced the Commission moved the Court for a directed verdict for the reason that the plaintiff has failed to show that he sustained such an injury as is contemplated by the Compensation law; that there was no accidental injury, and that plaintiff has failed to show by a preponderance of evidence that the disability of which he complains is the result of the alleged injury. The Court then stated his view of the evidence in the presence of the jury, and concluded "and the Court is accordingly required to direct a verdict in the favor of the defendant in this case. I have a form prepared here which you may step up and sign." This appears to be the only entry of the ruling of the Court sustaining the motion to direct a verdict.

A motion for new trial was overruled and judgment entered. Notice of appeal on questions of law was filed within proper time.

Three questions are presented; first, did the plaintiff suffer an accident as claimed; and, second, was such accident the proximate cause of the injuries of which he complains, and third, did it aggravate an existing condition?

## THE EVIDENCE

The evidence tends to show that the plaintiff was engaged as an electrician, and that the Superintendent, on the 10th of June, 1935, directed him, in company with another employee to bring down a cash register from the 8th floor of the building to the 2nd floor; that plaintiff frequently did this work, moving on an average one register a week; that on the day in question when the plaintiff, together with a fellow employee, was engaged in lifting the cash register, the plaintiff exclaimed, "Oh, I hurt my back." That the register then being moved weighed 340 pounds; that the plaintiff returned to work and continued in his employment

until the 12th of August; that during July he showed signs of limping, but continued his work, not, however, participating in the moving of registers after the 10th of June.

The plaintiff testified in substance that he was 28 years of age; having been employed by the Rike-Kumler Company for ten years; that his duties were those of an electrician, being in charge of the lighting equipment, telephone, electric wiring,. and work on elevators; that when lifting the register on the day in question, he got a "catch" in his back and was unable to continue further in that duty; that he assisted in moving registers on certain days, as required in the operation of the store, but that the moving of such registers was an unusual employment. That on the day in question he told his companion that he had hurt his back and that he could not lift the register, describing the injury to the back as "just like pulling in there, like I tore something loose, is the way it felt"; that he could feel the pain when he walked, but that he continued in his employment; that he did not make a report of his injury. because it did not hurt him much and that he could get around and that he had the same experience at other times in lifting things similar to that then experienced, but that it would get right again; that he reported on the 12th day of August to the nurse and submitted himself to various x-ray examinations in several hospitals, remaining in one for a period of 17 days, and that after leaving the hospital, including the day of the hearing. he was not able to walk; that he, at a former date had suffered an injury for which his doctor bills had been paid out of the fund.

Dr. James C. Walker, an orthopedic specialist, testified that he had given the plaintiff a superficial examination on the 17th day of August when he. found a slight amount of tenderness in the right sacro-iliac region, the diagnosis, however, being made primarily on x-ray examination; that his diagnosis at that time was systemic degeneration of some tissue of the right ilium: that he made an exploratory examination and an incision for the removal of tissue for microscopic examination which led to a diagnosis of myoloma with plasmocytoma, and that he sought a further examination from the experts of Johns Hopkins Hospital, who made a diagnosis of interrupted myeloma; that myeloma is a malignant growth of rare type, neoplasm. It is a sarcoma and malignant; that the symptoms which accompany mye-

loma are not from the myeloma itself but from the invasion of surrounding tissue in which the myeloma is present. Myeloma itself is not painful but the complications may be. One may not be conscious of any pain and yet have myeloma in the early stages. The Doctor stated that it was probable that myeloma was present sixty days prior to the examination on August 17th, and possibly that it was present six months prior to his examination; that it was possible, but hardly probable that it developed after June 10th, the date of the alleged accident, but he was of the opinion that it was present before June 10th. Being asked whether the lifting of the cash register causing a strain might aggravate the myeloma condition, the Doctor stated as to this, any tissue in any case may be irritated by injury, but in that the condition existing "you are not dealing with the myeloma so much as of its development"; that there was an actual destruction into the sacro-iliac joint by the myeloma itself and a weakening of the joint structure; and that a strain would be more easily applied to a weakened structure; that the sacro-iliac region was destroyed by the growth at the time of the operation: that he could not say that the myeloma was definitely aggravated by the injury: the destruction of the bone which was the result of the myeloma could be the cause that produced the symptoms, and being asked whether the myeloma was aggravated by the strain he answered, "That is possible. I do not say probable; I say possible." That myeloma is in the marrow of the bone. It is a destruction of the bone rather than the tissue. It destroys the bone, and that it would eventually develop regardless of any extraneous pain; and that the tissue had shown improvement under x-ray treatment. He states that independent of any strain in all probability it would not have been a great length of time before he would have developed symptoms and in all probability would have eventually had to quit his job. The Doctor states in substance that it was fortunate for the plaintiff that his condition was discovered at the time because it could then be more successfully treated than had it been discovered later. The disability period was definitely shortened because there was a rather continuous complaint from the time of the alleged accident until the Doctor's examination; that his accident probably brought him under treatment some weeks or months before he would have otherwise had it, and

to that extent he was benefited by earlier treatment, although it was rather a large lesion at the time the Doctor saw it. The ultimate outcome would perhaps have been bad in either case, whether it was or was not called to his attention by the injury. The condition has benefited from treatment. In his opinion the condition did not arise from strain, although the symptoms did. The condition existed before the strain. The strain at the best may have hastened such a thing when he became disabled from work, but that in all probability he would ultimately have been disabled, and the condition would have proceeded along approximately the same lines regardless of the strain, if not receiving x-ray treatment.

Dr. Merrill Prugh, another physician, testified that he examined the plaintiff on the 11th day of September, 1935, and found him reduced in weight with weakened condition with an open wound in his back, the result of the first operation, which he dressed at intervals. He found him emaciated with only partial use of his legs; that myeloma is a malignant tumor of the bone, originating in the marrow of the bone, developing gradually, not a common tumor; that if it had been present on August 17th, the date of his examination, it is probable it was also present on June 10th; purely a matter of opinion. He was asked if the myeloma was present on June 10th, could the experience of a strain on that day aggravate the myeloma condition, to which he answered, "That is a hard question to answer. I would say yes it could aggravate it because practically any injury to a malignant growth has some effect in increasing the rapidity of the growth; that myeloma is a progressive condition ,and if nothing is done to treat it it proceeds to the ultimate destruction of the bone." That he advised x-ray treatment which he believes has arrested it to some extent; that the sooner these treatments were started the better, and that the fact that this condition had been brought under treatment has been material in arresting it. The earlier it is brought to the patient's attention, 'the more advantage of subsequent treatments. Malignancy is aggravated by trauma which should be avoided as it may increase the rapidity of the growth. Malignant growths should be disturbed as little as possible in operation. Rapidity of malignant growth is generally accelerated by trauma, not always. It depends somewhat on the type of trauma or the malignancy. The origin of myeloma is purely speculative. The cause is not known.

This concludes the medical testimony.

## ASSIGNMENT OF ERRORS

The defendant assigns as errors that the court erred in sustaining defendant's motion for directed verdict, and that the decision of the court is contrary to law and not sustained by evidence, and for other errors.

The only opinion of the court sustaining the motion appears in the record in his statement to the jury in which he said generally to the jury:

"You have observed from the testimony here that the doctors testified that the plaintiff's disability was caused by myeloma which existed at the time when alleged injury occurred, so the plaintiff in order to recover would have to show that the condition of myeloma was aggravated by this alleged injury, and considering carefully the testimony of the doctors, the doctors have not testified that the condition was aggravated, that is that the condition of myeloma was aggravated by the injury and for that reason the plaintiff has not produced sufficient evidence to entitle him to recover."

And further, after the motion for new trial,

"I think that comes within the Lathrop case, 52 O. App., 55, and I will have to direct a verdict on that question."

The case referred to by the trial court, 52 Oh Ap, 55, holds that it is necessary to show not only an accidental injury occurring in the course of the employment, but also that such injury was the proximate cause of the death, and that where the testimony of physicians only tends to show that the injury could have been the cause of the death, there being no positive evidence that it was the cause, it is error for the trial court to overrule the motion of the defendant at the close of the evidence for a directed verdict. The court states:

"There is no evidence in the record, competent or incompetent, to prove a proximate causal connection between the alleged injury and the death more than two years later. The evidence was that it could have been the cause, but there is no evidence that it was the cause."

But see contra, **Esmonde v Locomotive Works, 51 Oh Ap, 454. (19 Abs 577).**

Counsel for both sides have been diligent in furnishing the court authorities which

each claims support their several positions. It would be of little benefit to comment in detail on the various decisions of our several courts in cases of this character.

In the case of **Industrial Commission v Luger, 54 Oh Ap, 148, (23 Abs 495),** Judge Hornbeck of this court, reviews in searching detail the various decisions of our Supreme Court and the fact that the cases are not always reconcilable.

It is beyond controversy that there is no evidence in this record that indicates that the condition which afflicted the plaintiff was caused by the strain he may have suffered on June 10th when he was assisting his fellow workman in lifting a cash register. The disease from which he was suffering was a deep seated, malignant, sarcoma, attacking the tissues, bone and marrow at the point where he experienced pain when he was lifting the cash register. It is far more probable, as the doctors testify, that the disease had made such inroads upon the bony structure of the joint as to give rise to pain when subjected to strain. It might be stated that instead of the strain from which he suffered pain being the cause of his serious affliction, the disease from which he suffered propably existing at the time and prior to the 10th of June, gave rise to the pain, and that the natural progress of the disease until August 12th, when he first submitted to medical examination, was in no way caused by the strain he may have suffered. The danger signal displayed on June 10th and continuing intermittently until the examination developed the seriousness of his condition was, as the doctors testify, ultimately beneficial to the plaintiff for the reason that it brought the trouble more promptly to the attention of the physicians. We have no difficulty in arriving at the conclusion that the ultimate trouble was not caused by the accident,—if it were an accident within the terms of the Workmen's Compensation Act.

The more difficult question is whether or not a pre-existing condition as testified to by the physicians was aggravated and its development hastened by the strain suffered. As is well stated by counsel for appellant, p. 7 of his brief,

"Coming now to the second phase of plaintiff's question, 'whether such injury proximately contributed, aggravated or accelerated plaintiff's diseased condition'. "In order that plaintiff may establish his right to enjoy compensation in the Workmen's Compensation Act, under this theory he must show: First: That he suffered a diseased condition on the day of the alleged injury. Second: That he sustained an injury. Third: That the injury proximately contributed, aggravated or accelerated the diseased condition, causing the disability."

We think we may safely say that there is evidence that the diseased condition existed in some stage on June 10th, the day of the injury, but the question remains whether the injury proximately contributed to or aggravated or accelerated the diseased condition.

In the case of **Ackerman v Industrial Commission, 131 Oh St 374,** it is held that unless and until it is shown that the diseased condition existed at the time of the injury, all testimony tendered for the purpose of showing acceleration of the diseased condition is incompetent and should be excluded. As we have indicated, we think the condition there stated is met. The court states in that case on page 374:

"If death is fairly chargeable to an accident suffered in the course of the employment as an efficient cause, compensation may be awarded, and the previous physical condition of the employe does not affect the right. So long as the injury sustained is the proximate cause of the incapacity or death, compensation is to be allowed although there was a pre-existing disease, if the disease was aggravated or accelerated by the accidental injury."

To entitle a claimant to an award it is not sufficient to show that death occurred while he was engaged in the employment; there must be some evidence that the employment had some causal connection with the injury, either through its activities, its conditions or its environment. **Mfg. Co. v Wroebel, 125 Oh St, 265.** A disease other than enumerated occupational diseases is not compensable merely because it was contracted during the period of a particular employment. To be compensable such disease mut be occasioned by or followed as a result of physical injury. **Industrial Commission v Middleton 126 Oh St, 212; Industrial Commission v Franken 126 Oh St, 299.** Unless a claimant's condition is the result of physical injury it is not compensable under the Workmen's Compensation Law of Ohio. **Industrial Commission v Lambert 126 Oh St, 501.**

While the doctors may have expressed

some opinion that under certain conditions the injury may have accelerated the disease, yet we are of the opinion that they are so indefinite as not to present a case that requires the question of acceleration alone to be submitted to the jury.

In the case of **Industrial Commission v Schick 125 Oh St, 419**, it is held that where there is some evidence upon every element essential to create liability the case should be submitted to the jury, but this case was decided before that of **Hamden Lodge v Ohio Fuel Gas Co., 127 Oh St, 469**, where it was held the scintilla rule no longer obtains in Ohio

"But if upon any essential issue after giving the evidence such favorable consideration, reasonable minds can come to but one conclusion and that conclusion is adverse to such party the judge should direct a verdict against him."

We feel that reasonable minds can not come to the conclusion that there was any injurious acceleration of the disease by the injury complained of; that if it was accelerated it was beneficial to the plaintiff in that it gave opportunity for early treatment. Holding as we do that neither the diseased condition nor the acceleration thereof could be attributed to the strain complained of, the judgment of the Court below is affirmed. Judgement accordingly.

BARNES, PJ, and HORNBECK, J, concur.