18374

Ethel B. HERNDON, Carol Judith Herndon, Barbara Susan Herndon and Warren Keith Herndon, Appellants, v. MORGAN MILLS, INC., and Employers Mutual of Wausau, Respondents.

(143 S. E. (2d) 376)

*Eugene Huggins, Esq.,* of Bennettsville, *for Appellants,*

*Messrs. Robinson, McFadden & Moore,* of Columbia, *for Respondents,*

July 7, 1965.

Moss, Justice.

This case arose under the South Carolina Workmen's Compensation Act, Section 72-1 *et seq.,* Code of 1962. There is here involved an appeal from an order of the Circuit Court reversing an award of the Industrial Commission in favor of the dependent widow and children, the appellants herein, on account of the death of Jack M. Herndon, alleged to have resulted from an accident arising out of and in the course of his employment.

The record shows that Jack M. Herndon had been in the employ of Morgan Mills, Inc., since 1939 as a mechanic. On October 3, 1962, a fellow employee was pulling one doff box and pushing another while Herndon was on the second or third step of a ladder working on a blower in the plant of his employer. While so engaged the second doff box struck the ladder and Herndon fell off such to the floor, landing on his feet. Shortly thereafter, Herndon began to experience pain in his back but received no medical attention until December 19, 1962, when he was sent to a chiropractor and received treatment from him until January 26, 1963, with a diagnosis of a torn muscle and possible herniated disc. The treatment administered by the chiropractor did not relieve Herndon's condition and it was recommended that the patient be sent to Duke University Hospital for a more complete examination. He was admitted to such hospital on February 13, 1963, and after examination, a diagnosis of multiple myeloma, a type of bone marrow cancer, was made and confirmed by biopsy. Herndon had been originally admitted to Duke Hospital as a patient of

the orthopedic service but after the aforesaid diagnosis he was transferred to the hematology service for treatment. His condition rapidly became worse and he died on March 3, 1963. The primary cause of death was multiple myeloma and the immediate cause was uremia and bronchial pneumonia.

It is the position of the appellants that there was a causal connection between the injury by accident and the death of Jack M. Herndon from myeloma and that they were entitled to workmen's compensation for his death. The respondents denied liability and contended that the accident did not cause his death nor did it aggravate a pre-existing disease so as to hasten death.

A hearing was held before a Single Commissioner on September 11, 1963. It appears from the testimony given at this hearing that Herndon was forty-six years of age and had been in the employ of Morgan Mills as a mechanic for a number of years. Several witnesses, including the wife of the deceased employee, testified that prior to the accident, which occurred on October 3, 1962, Jack M. Herndon, although of slight build, was in apparent good health and had regularly performed the duties of his employment with Morgan Mills and also did part-time work for another employer. There is testimony that he was never the same after the aforesaid accident and suffered pain. His posture was not good, he did not appear as energetic as before and his color was not good. It was testified that he worked without interruption from October 3, 1962 until February 9, 1963.

This employee was examined by Dr. J. R. Ellington, a chiropractor, on December 19, 1962. This doctor made X-rays on that date which showed a herniated disc between the first and second lumbar vertebra and a muscle torn loose from its attachment to the vertebrae column. The treatment by Dr. Ellington from December 19, 1962 until January 26, 1963 consisted of manipulation, diathermy and taping. When such gave no relief, the patient was sent to Duke Hospital, Durham, North Carolina, for a more complete examination.

This employee was first examined at Duke Hospital by Dr. Frank W. Clippinger, Jr. on February 13, 1963. This doctor testified that after X-rays had been made and other tests given, a diagnosis of multiple myeloma was made. This was described as a disease of bone marrow which falls into the malignancy group and is a generalized type of disease. This physician testified that the X-rays revealed diffused osteoporosis, which is a demineralization of bone, and covered all areas of bone that were X-rayed, including the spine, ribs, hip joint and skull, and there was an indication of a fracture at dorsal 11 and possibly at dorsal 7.

We quote the following from the testimony as given by Dr. Clippinger:

"Q. You found, I believe you stated, a compression fracture at dorsal 11 and possibly dorsal 7, is that correct?

"A. That is correct.

"Q. In your opinion do those fractures have any connection with the multiple myeloma?

"A. I think so.

"Q. What connection, sir?

"A. I think that the involvement of these vertebral bodies with the tumor was sufficient to weaken them enough that they would collapse.

"Q. They would collapse. In a case of multiple myeloma is it possible to have what might be termed pathological fractures?

"A. Yes, it is."

And again from his testimony, we quote the following:

"Q. Based on that then, Dr. Clippinger, your x-rays showed this weakening of the bones or osteoporosis not only in the spine but in the ribs and skull and in other places?

"A. That is correct, sir.

"Q. Given this history which you received of having fallen or jumped off of the second or third step of a step ladder and landing on his feet, would you have an opinion as to whether that would bring on these osteoporosis findings that the x-ray revealed?

"A. That fall would bring on the generalized changes in bone?

"Q. Yes, sir?

"A. I will defer the question to Dr. Rundles, but in my opinion probably not."

Dr. R. Wayne Rundles, in charge of the hematology service at Duke Hospital, was the specialist who confirmed the diagnosis of multiple myeloma made by Dr. Clippinger. We quote the following from his testimony:

"Q. Now, given a history, Dr. Rundles, of the man falling off the second or third step of a step ladder with some force but landing on his feet, and a further history under one statement of having back pain immediately and under another statement of not having any pain for about two days, a history of continuing to work for some four months thereafter, although complaining of back pain during some portion of that period, a history of coming into this hospital and being diagnosed as multiple myeloma, and progressively gets worse at a rapid rate to the point of the death on March 3, would you have an opinion based on a reasonable medical certainty as to whether the fall from the step ladder caused the resulting death?

"A. In my opinion there is no correlation between injury and the development of multiple myeloma. If it is true that he remained on the job as one of our notes state through February 8, then I would think that the fall in October had no relationship to his ultimate death or necessarily to the progression of his disease.

"Q. Yes, sir. Then it would not have necessarily accelerated or aggravated the disease, assuming that the disease pre-existed the fall?

"A. Right.

"Q. Do you have an opinion as to whether the disease in this case did pre-exist the fall?

"A. I can only say that it is fairly typical for minor injuries to occur and bring to light the fact that someone has weakened bones in one area or another. It would be fairly

typical for such an event as this to produce enough pain to lead to the taking of X-rays and the discovery of underlying disease."

On cross examination Dr. Rundles gave the following testimony:

"Q. Doctor, do you say there was no relationship in your opinion between the fall or injury he received and the myeloma, is that correct?

"A. There is no relation between any injury of this type and the cause or the development of the multiple myeloma.

"Q. Doctor, will trauma aggravate myeloma?

"A. In general the answer would be no. It might break a bone that is weakened, but trauma unless it produced some other injury that would confine an individual in bed, in others words, immobilize him or sever the spinal cord, or something of that sort, would not aggravate the basic disease."

Dr. Rundles testified that "No one knows the cause of myeloma in man." Dr. Ellington testified that it is theoretically possible for trauma to precipitate or aggravate multiple myeloma, but when asked in connection with this case whether "it was theoretically probable", his answer was, "No, sir. Not in this case."

The Commissioner found that Jack M. Herndon suffered an injury by accident arising out of and in the course of his employment when he fell from a ladder upon which he was standing and that there was a causal connection between the injury and Herndon's death from multiple myeloma.

There is no medical testimony of any causal connection between Herndon's fall from the ladder and his death from multiple myeloma five months later. The medical testimony here completely negatives causal connection.

The Single Commissioner states that reliance was not had upon medical testimony alone to show causal connection between the injury and the subsequent death, but rather in addition upon the circumstances surrounding the injury and

the events which followed. The Commissioner's opinion contained the following:

"The preponderance of the testimony submitted by people that had known the deceased employee sustains the fact that prior to his accident on October 3, 1962, the claimant worked regularly both in the mill and at home and appeared to be normal in every respect; he walked normally, had good posture and possessed a healthy mental attitude. Subsequent to his accident, these same witnesses observed that the claimant continuously complained of his back and took on a pale countenance. They testified that the claimant's posture changed and he leaned when he walked. Therefore, the medical testimony is not solely relied upon to show causal connection, but to show that, from the other facts and circumstances, a conclusion of causal connection did not involve entry into the field of conjecture, surmise and speculation."

The Commissioner, in finding causal connection in this case, relies upon the rule set forth in Larson's Workmen's Compensation Law, Vol. I, Section 12.20, which is as follows:

"Whether the employment aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact, not law, and a finding of fact on this point by the commission based on any medical testimony, or, in the commoner afflictions where the commissioners themselves have acquired sufficient medical expertise, based on the commission's expert knowledge even without medical testimony, will not be disturbed on appeal."

The employer and its insurance carrier made timely application for a review of the aforesaid award to the Full Commission and, by appropriate exceptions, asserted that the Single Commissioner was in error in finding a causal connection between the accident of October 3, 1962, and the subsequent death of Herndon from multiple myeloma on March 3, 1963, there being no competent evidence to sustain such a finding. The Commission, by three to two majority, affirmed the award made by the Single Commis-

sioner. Thereafter, an appeal was duly taken to the Court of Common Pleas for Marlboro County and was heard by the Honorable J. A. Spruill, Jr., presiding Judge, who issued his order vacating and setting aside the award of the Commission. Timely appeal to this Court followed.

The question here for determination is whether there was any competent evidence to support the findings of fact by the Commission that there was a causal connection between the injury sustained by Jack M. Herndon on October 3, 1962, and his subsequent death from multiple myeloma on March 3, 1963. If there was sufficient evidence to support the findings of the Commission, then the trial Judge was in error in reversing the Commission. However, if there was no causal connection between the employment of the deceased and his death as aforesaid, affirmance of his decision is required.

We have held in numerous cases that the claimants who assert their right to compensation must establish by the preponderance of the evidence the facts which will entitle them to an award under the Workmen's Compensation Act and such award must not be based on surmise, conjecture or speculation. *Glover v. Columbia Hospital,* 236 S. C. 410, 114 S. E. (2d) 565. Therefore, the burden of proving the right to compensation in this case rested upon the appellants. The difficulty in proving a fact in a compensation case does not relieve the party on whom the burden rests of proving it, and does not shift the burden to the other party. *Baburic v. Butler Bros.,* 233 Minn. 304, 46 N. W. (2d) 661. It follows that the failure of the claimants to furnish evidence from which the inference can be drawn that the injury sustained resulted in death precludes the granting of a compensation award.

It is well settled that in workmen's compensation cases the Commission is the fact-finding body and that on appeal, this Court and the Circuit Court are limited in their review of the facts to a determination of whether or not there is any competent evidence to support

the factual findings of the Commission. When there is a conflict in the evidence, the findings of fact of the Commission are conclusive. It is only when the evidence gives rise to but one reasonable inference that the question becomes one of law for the Court to decide. *Black v. Barnwell County,* 243 S. C. 531, 134 S. E. (2d) 753.

In *Hines v. Pacific Mills,* 214 S. C. 125, 51 S. E. (2d) 383, we held that awards of the Industrial Commission may not rest upon surmise, conjecture of speculation but must be founded upon substantial evidence, and that if the evidence is all one way, or if the findings of the Commission are based on surmise, speculation or conjecture, then the issue becomes one of law for the court and not of fact for the Commission. In this same case we held that expert testimony is not binding upon the fact-finding body if there is competent substantial evidence to the contrary, though in matters of such kind which are not of common knowledge, fact-finding body must accept opinion of experts.

In *Baker v. Graniteville Co.,* 197 S. C. 21, 14 S. E. (2d) 367, we said:

"* * * But when the Commission in effect disregards such expert testimony it must perforce find other competent evidence in the record upon which to base its findings. The evidence given by the physicians is that the trauma suffered by Baker was a factor in accelerating or aggravating the infection and septicemia which was virulent in Baker's blood stream when he received the blow. And there is no other evidence in the record except such as is based upon surmise and conjecture, upon which the findings of the Commission can be planted."

The general rule adduced from our decisions is that if the facts show a causal connection between the injury and the development, aggravation or acceleration of cancer, then the two cannot be separated and the victim of the cancer, or his dependents, is entitled to compensation. *Glover v. Columbia Hospital,* 236 S. C. 410, 114 S. E. (2d) 565.

The appellants argue that since the medical witnesses admitted their inability to assign a cause to the onset of the disease of cancer or for the aggravation or acceleration thereof, that their testimony here of a lack of causal connection between the minor fall of the employee and his subsequent death from multiple myeloma has no probative value. However, the appellants overlook the fact that even though the cause of cancer in man is unknown, these medical witnesses did express a positive opinion that there was no causal connection between the employee's fall from the ladder and his death from multiple myeloma five months later.

This Court has had occasion in several cases to determine whether the Industrial Commission was correct in holding that there was a causal connection between an injury and the development of cancer. The case of *Jeffers v. Manetta Mills,* 190 S. C. 453, 3 S. E. (2d) 489, involves a cancer which had developed where the deceased had suffered a burn on his hand. In sustaining an award in favor of the claimants, this Court said "it is easily inferable from the medical testimony that the cancerous condition which later developed had a causal connection with this burn." In *Hughes v. Easley Cotton Mill,* 210 S. C. 193, 42 S. E. (2d) 64, the deceased had a serious fall and subsequently died from cancer of the neck. This Court held that the Commission was warranted in finding from the conflicting medical evidence that the injury aggravated and accelerated a pre-existing condition of cancer on the neck of the deceased. In *Sligh v. Newberry Electric Coop.,* 216 S. C. 401, 58 S. E. (2d) 675, we held that notwithstanding a conflict of expert opinion expressed by the physicians, that there was ample competent testimony to sustain the finding of fact by the Commission to the effect that the accidental injury had a causal connection with the employee's death, in that it aggravated and accelerated the condition of cancer existing prior thereto.

In *Glover v. Columbia Hospital,* 236 S. C. 410, 114 S. E. (2d) 565, we held that there was sufficient evidence to sustain a finding of the Commission that the accident aggra-

vated, accelerated and brought about a recurrence of a pre-existing cancer and was causally connected with the employee's disability and subsequent death in such case. A physician testified that in his opinion the injury sustained by Glover was "most probably" the trigger to his condition. There was contrary evidence given by another medical witness.

The only testimony of any medical or expert witnesses in this case is to the effect that there was no causal connection between the employee's fall and his death from multiple myeloma. However, the appellants contend that independently of the medical or expert testimony there is ample evidence growing out of the circumstances of this case and the sequence of events that the multiple myeloma from which he died was caused by his injury or was aggravated by such and hastened his death.

In *Ballenger v. Southern Worsted Corp.*, 209 S. C. 463, 40 S. E. (2d) 681, the employee claimed that his eyesight was impaired by an accident, whereby the contents of a dye kettle erupted causing a hot liquid chemical to be thrown into his eyes. He testified that his vision was good prior to the accident. The only medical testimony was to the effect that claimant's impaired vision was caused by astigmatism and that the accident had no injurious effect. This Court held that the medical testimony was not conclusive, irrespective of other evidence, and that the injured workman was as competent to testify as to his ability to use his eyes before and after the accident as was any expert. A like situation was found in the case of *Poston v. Southeastern Construction Co.*, 208 S. C. 35, 36 S. E. (2d) 858. In *Ashley v. South Carolina Highway Department*, 213 S. C. 354, 49 S. E. (2d) 505, this Court, with reference to the *Ballenger and Poston cases*, said: "In those cases, the resultant disability was not invisible, but was to a considerable degree external and objective, and subject to observation."

In the *Ashley case* the sole question for determination was whether there was any competent evidence to justify the con-

clusion of the Commission that there was a causal connection between an accident sustained by the claimant and headaches which he testified commenced immediately thereafter. In affirming a judgment of the Circuit Court reversing an award of compensation made by the Industrial Commission, this Court said:

"* * * As shown by the medical testimony, the doctors would not ascribe the traumatic injury to the head as the origin of claimant's alleged headaches and dizziness. It seems to us that the only reasonable inference to be drawn from the medical testimony, and from all of the evidence in the case, in the absence of an *x*-ray report, is that the headaches and dizziness resulted directly from chronic infection of claimant's four main sinuses. Any other conclusion could not be disassociated from surmise and conjecture; any other conclusion would be guesswork."

In *Burgess v. Belton Mills,* 215 S. C. 364, 55 S. E. (2d) 292, the deceased was alleged to have "sprained" her back on her first day of work, August 30, 1945, experiencing pain in the back when picking up a quill box. A year or two previously a lump in one breast had been discovered, but it did not appear to be enlarging or growing. Some weeks after the back "sprain" *x*-rays indicated destruction of one of the vertebrae of the back, and subsequently a diagnosis of inoperable cancer of the left breast was made. Later that fall she became pregnant and an operation to remove the womb with the baby in it, was done to slow the spread of the cancer. She improved until the following summer, when she became paralyzed from the spread of the cancer, and died eleven months after the "sprain".

The medical testimony was positive that the cause of death was the cancer that pre-existed the accident and that the strain of a muscle would not have aggravated or accelerated the death.

The claimants produced no medical evidence of causal connection, and this Court reversed the Commission and the Circuit Court, holding that the claimants had the burden of

proof, that an award cannot be based on surmise or conjecture; and "where there is no evidence of substance to make issue with the unanimous medical opinion, referred to in the testimony above, to the fact that the decedent's death could not have been caused or accelerated by the accidental injury referred to, it becomes the duty of this Court to reverse the award. The lack of substantial conflict in the testimony renders the question of causal connection or acceleration of death, which is ordinarily one of fact for the Industrial Commission, a question of law to be determined by the Court." We concluded that the testimony failed to show that the deceased's death was caused or accelerated by the injury complained of, but showed beyond all doubt that it was not.

The only case we have been able to find or to which our attention has been directed involving malignant myeloma is that of *Conrad v. Industrial Commission*, 58 Ohio App. 434, 16 N. E. (2d) 780, affirming a directed verdict in favor of the defendant. It appears that on June 10, 1935, Conrad, while in the course of his employment, sustained a severe injury to the right side of his back in the region of the right sacroiliac joint while assisting another employee in lifting a cash register weighing three hundred and forty pounds. He continued to work until August 12, 1935. Thereafter, by medical examination, it was determined that he was suffering from a malignant myeloma. Medical testimony was that the condition did not arise from the strain of lifting the cash register, although the symptoms did. We quote from said case the Syllabus by the Court:

"Where a workman complains of pain while assisting in lifting a cash register weighing 340 pounds, and a medical examination two months later leads to a diagnosis that the patient was then suffering from malignant myeloma, a bone disease, which was probably present at the time of the alleged accident, and the doctors testify that the diseased bone condition was not caused by the strain in lifting, but that the pain suffered was a symptom of the disease, and beneficial to the patient, in that it lead to earlier treatment, the court

did not err in directing a verdict in favor of the Industrial Commission of Ohio."

The Court further said:

"It is beyond controversy that there is no evidence in this record that indicates that the condition which afflicted the plaintiff was caused by the strain he may have suffered on June 10 when he was assisting his fellow workman in lifting a cash register. The disease from which he was suffering was a deep seated, malignant sarcoma, attacking the tissues, bone and marrow at the point where he experienced pain."

In *Cross v. Concrete Materials,* 236 S. C. 440, 114 S. E. (2d) 828, this Court reversed an award of the Commission which had been upheld on circuit, holding that the medical evidence did not meet the "most probably" test of causation and the deficiency was not supplied by the testimony of the claimant and his wife. This Court said that the burden was upon claimant to establish by the preponderance of the evidence the facts which would entitle him to an award and that "He cannot prevail by the resolution of doubts." It was further said:

"* * * There is no sound reason for the translation of the rule of liberal construction of the law to the finding of the facts to the end that doubt with respect to the latter shall be resolved in favor of the claimant. Doubt, as the foundation of a factual finding, can hardly be distinguished from surmise, speculation and conjecture which countless cases have condemned as a substitute for facts and legitimate inferences. Conviction, not doubt, is the proper basis of a conclusion of fact. * * *"

The case of *Grice v. Dickerson, Inc.,* 241 S. C. 225, 127 S. E. (2d) 722, is distinguishable from the instant case. There the medical testimony fell short of that required to prove causation but in such testimony the medical experts clearly recognized the fact that either the traumatic injury sustained by the claimant or subsequent surgery for the repair of his resulting hernia could have been a precipitating

factor in the onset of rheumatoid arthritis. Where the testimoney of medical experts is not solely relied upon to establish causal connection, whether the presence or absence of such medical testimony is conclusive depends upon the particular facts and circumstances of the case. We quote from the *Grice case* the following:

"* * * The medical testimony was not relied upon to show causal connection, but to show that, from the other facts and circumstances, a conclusion of causal connection did not involve entry into the field of conjecture, surmise and speculation. The Commission was faced with the duty to choose among two or more causative factors. The uncertainty of the medical testimony was sufficiently supplied by the sequence of events which followed the injury."

In the *Grice case* we held that while the evidence was undoubtedly scant many circumstances there involved, not present here, constituted some evidence reasonably tending to support the conclusion of the Commission as to causal connection and that the uncertainty of the medical testimony with reference thereto was sufficiently supplied by the sequence of events which followed the injury. It was further held that the Commission did not disregard the medical testimony but rather in the light of other facts and circumstances drew inferences consistent with the medical testimony in the record. However, the medical testimony in the instant case completely negatives causal connection and the finding of the Commission was wholly inconsistent with the medical testimony.

We have held where the subject is one for experts or skilled witnesses alone and concerns a matter of science or specialized art or other matters of which a layman can have no knowledge, the unanimous opinion of medical experts on particular subjects may be conclusive, even if contradicted by lay witnesses. *Anderson v. Campbell Tile Co.*, 202 S. C. 54, 24 S. E. (2d) 104; *Dennis v. Williams Furniture Corp.*, 243 S. C. 53, 132 S. E. (2d) 1.

Larson in his treatise on Workmen's Compensation Law, Vol. II, Section 79.54, page 304, asserts that reliance on lay testimony is not justified when the medical question is a complicated one and likely to carry the fact-finding body into realms which are more properly within the province of medical experts. We quote therefrom the following:

"The increasing tendency to accept awards unsupported by medical testimony should not be allowed to obscure the basic necessity of establishing medical causation by expert testimony in all but simple and routine cases—and even in these cases such evidence is highly desirable and is a part of any well prepared presentation."

We have given most cereful consideration and study to the record in this case in an effort to see whether there is any evidence, as distinguished from speculation and surmise, upon which it can be found as a reasonable inference by the fact-finding body that the death of Jack M. Herndon was causally connected with the accident of October 3, 1962, and after such study and consideration the conclusion is inescapable that there is no such evidence in the record. There is no evidence of substance to make issue with the unanimous professional opinion of the medical witnesses that, in effect, the death could not have been caused or accelerated by the aforesaid accident. The lack of substantial conflict in the evidence renders the question of causal connection or acceleration of death, which is ordinarily one of fact for the Commission, a question of law for decision by the Court.

The exceptions of the appellant are overruled and the judgment of the Circuit Court is affirmed.

TAYLOR, C. J., and LEWIS BUSSEY and BRAILSFORD, JJ., concur.