# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Samuel Paulino, Claimant, Petitioner,

v.

Diversified Coatings, Inc., Employer, and Amguard Ins. Co., Carrier, Respondents.

Appellate Case No. 2022-001095

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal from the Workers' Compensation Commission

———————

Opinion No. 28212
Heard March 5, 2024 – Filed June 26, 2024

———————

## REVERSED

———————

Stephen N. Garcia, of Garcia Law Firm, LLC, of Greenville, for Petitioner.

George D. Gallagher, of Speed, Seta, Martin, Trivett & Stubley, and Fickling LLC, of Columbia, for Respondents.

———————

**JUSTICE FEW:** The workers' compensation commission awarded Samuel Paulino total and permanent disability benefits because it found he sustained a fifty percent or greater loss of use to his back. The court of appeals reversed the commission's

award "because there is no medical evidence in the record that supported the [commission's] findings." In making this ruling, the court of appeals misapplied the "substantial evidence" standard for reviewing decisions of the commission. We reverse the court of appeals and reinstate the commission's award.

## I.    Facts and Procedural History

In February 2015, Samuel Paulino was injured while employed as a custodian at Diversified Coatings, Inc. Paulino has been out of work since the injury. Paulino went to Dr. Timothy McHenry complaining of constant pain in his back. McHenry recommended and performed surgery to treat "a right-sided paracentral herniation at L3-4." After the surgery, Paulino continued to experience pain, prompting further medical treatment, including physical therapy. He completed twelve sessions with a physical therapist, Kashmira Patel. However, Paulino did not progress as anticipated, and subsequent evaluations revealed ongoing pain and limited mobility, leading to adjustments in his medications and additional treatment such as epidural steroid injections.

Despite the treatment, Paulino's pain persisted. McHenry sent Paulino for another MRI because "patient has just not done as expected in the post-op period." The MRI revealed "no significant neurological impingement remain[ed]" and "no indication for further surgery." At the same appointment, McHenry also wrote Paulino "continues to do much worse than we think he should at this point" and "I can't work with his current symptoms." McHenry referred Paulino to Dr. Jyoti Math for pain management.

Math adjusted Paulino's medications and observed his difficulty walking and restricted lumbar range of motion. After a few appointments with Paulino, Math noted Paulino's clinical progression was "gradually worsening." Math also determined Paulino should not return to work until he underwent a functional capacity evaluation.

Hayley Drews—a physical therapist—conducted the functional capacity evaluation and noted Paulino achieved a physical demand characteristics level of "medium" and an occasional lift maximum of fifty pounds. Drews also highlighted significant limitations and difficulties in performing various tasks due to Paulino's ongoing pain.

At a follow-up visit after his functional capacity evaluation, Paulino told Math that he tried his best during the evaluation and his pain was aggravated after the evaluation for the next couple of days. He also told Math he was afraid he could not go back to work with the restrictions Drews recommended. Math noted that considering the duration of the pain, Paulino would most likely have chronic pain issues. Math recommended Paulino start a work conditioning program and not return to work without the proper conditioning. She wrote that Paulino had reached maximum medical improvement. On the same day, Math completed a Form 14B and provided that Paulino had a twelve percent permanent physical impairment to the lumbar spine. When asked what Paulino's "permanent physical limitations" were, Math provided: "Light work duty," "no lifting > 10 Lb.," and "needs work conditioning."

McHenry responded to a questionnaire sent by Paulino's attorney. McHenry stated Paulino had reached maximum medical improvement and assigned a thirteen percent impairment rating to the whole person. Dr. Glenn Scott—also at the request of Paulino's attorney—reviewed the functional capacity evaluation and wrote that Paulino "would not be able to sustain the workplace activities indicated by the FCE for a full eight hour day, particularly not on a day-after-day basis."

At a hearing before the single commissioner, Diversified argued Paulino was not permanently and totally disabled. Paulino argued he was permanently and totally disabled under either section 42-9-10 or 42-9-30(21) of the South Carolina Code (2015).[1] The commissioner received Paulino's medical records and heard his testimony. Paulino testified that he did not think he would currently last two hours at his job with Diversified because he would "have to exert a lot of force; you have to get down." Paulino testified the functional capacity evaluation was easier than his job at Diversified and that he was in "a lot of pain" when he took the evaluation. He said he needed help getting out of bed for three days following the evaluation.

The single commissioner found, "Pursuant to § 42-9-30(21), Claimant has sustained a greater than 50% disability to the spine, and therefore is permanently and totally

[1] Paulino also argued he suffered a compensable injury to his psyche. The single commissioner found Paulino had suffered an injury to his psyche under section 42-1-160 of the South Carolina Code (2015). The appellate panel affirmed that finding and it is not at issue on appeal.

disabled, and Defendants having failed to rebut that presumption, Claimant is thereby entitled to compensation under § 42-9-10(B)."  The single commissioner also found Paulino's impairment ratings were low "based on the poor surgical result" and that "based on the medication list alone, [Paulino] has suffered a major disability."  The appellate panel affirmed and adopted the same findings of fact and conclusions of law as the single commissioner.

The court of appeals reversed in an unpublished opinion.  *Paulino v. Diversified Coatings, Inc.*, Op. No. 2022-UP-096 (S.C. Ct. App. filed Mar. 9, 2022).  The court of appeals held "the Commission erred in affirming the single commissioner's determination that Claimant's back is impaired greater than fifty percent because there is no medical evidence in the record that supported the single commissioner's findings." 2022-UP-096, at *1.  Paulino filed a petition for a writ of certiorari, which we granted.

## II.     Standards for Decision by the Commission and Judicial Review

The commission decides questions of fact, S.C. Code Ann. § 1-23-380(5) (Supp. 2023), and it does so by the familiar preponderance of the evidence standard, *see Hill v. Jones*, 255 S.C. 219, 225, 178 S.E.2d 142, 145 (1970) (stating a claimant must "prove his right to benefits by the greater weight or preponderance of the evidence"); *Herndon v. Morgan Mills, Inc.*, 246 S.C. 201, 209, 143 S.E.2d 376, 380 (1965) ("We have held in numerous cases that the claimants who assert their right to compensation must establish by the preponderance of the evidence the facts which will entitle them to an award . . . ." (citing *Glover v. Columbia Hosp. of Richland Cnty.*, 236 S.C. 410, 414, 114 S.E.2d 565, 567 (1960))).[2]  Our standard for reviewing

---

[2] Our point here is exclusively that the commission uses the preponderance of evidence standard, and we are cautious about citing the "burden of proof" language in *Hill* and *Herndon*.  Though Paulino clearly bore the burden of demonstrating he lost fifty percent or more of the use of his back, the claimant does not always bear the factual burden in workers' compensation cases. *See, e.g.*, *Pilgrim v. Eaton*, 391 S.C. 38, 49, 48-50, 703 S.E.2d 241, 246, 246-47 (Ct. App. 2010) (stating, "On the question of a burden of proof for the amount of compensation due for a compensable injury, the Workers' Compensation Act is silent, and our courts have hardly spoken," and discussing various scenarios).  In fact, Diversified bore the burden of rebutting the presumption of total and permanent disability that arose under subsections 42-9-30(21) and 42-9-10(B).

the commission's factual findings is set forth in subsection 1-23-380(5)(e), which provides, "The court may reverse or modify" a decision from the workers' compensation commission if "the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *See also Clemmons v. Lowe's Home Centers, Inc.-Harbison*, 420 S.C. 282, 287, 803 S.E.2d 268, 270 (2017) ("The South Carolina Administrative Procedures Act governs judicial review of decisions by the Workers' Compensation Commission." (citing S.C. Code Ann. § 1-23-380 (Supp. 2015))). We have repeatedly stated, "'Substantial evidence' . . . is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached . . . to justify its action." *Clemmons*, 420 S.C. at 287, 803 S.E.2d at 270 (quoting *Adams v. Texfi Indus.*, 341 S.C. 401, 404, 535 S.E.2d 124, 125 (2000)); *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981) (citation omitted) (same). There is nothing in the commission's standard for decision nor in our standard of review that requires a claimant establish his claim by "medical evidence." The court of appeals erred by imposing such a standard.

### III. Analysis

Reviewing the commission's factual finding that Paulino suffered a fifty percent or greater loss of use of his back under the proper substantial evidence standard, we hold the commission's award is supported by substantial evidence and thus should have been affirmed.

Generally, the degree of a claimant's loss of use to a scheduled member is a question of fact for the commission. *Clemmons*, 420 S.C. at 288, 803 S.E.2d at 271. In *Clemmons*, however, we reversed the commission's factual finding that the claimant suffered less than a fifty percent loss of use of his back based primarily on the very high numerical impairment ratings given to him by multiple medical professionals. *Id.* We stated, "Every doctor and medical professional who assigned an *AMA Guides* impairment rating indicated Clemmons lost more than seventy percent of the use of his back, including Dr. Drye, whom the Commission particularly relied on in making its findings." *Id.* Thus, the medical evidence in *Clemmons* was overwhelming, leaving what we called "*no* evidence in the record that Clemmons suffered anything less than a fifty percent impairment to his back." *Id.*

The court of appeals relied on *Clemmons* in concluding there is "no medical evidence in the record" to support the commission's findings. Diversified, in turn, argues *Clemmons* stands for the proposition that doctors' medical impairment ratings are "virtually outcome determinative" of a claimant's entitlement to permanent and total disability compensation under subsection 42-9-30(21).[3] Diversified argues that even if impairment ratings do not control, they are "clearly the paramount factor for the Commission's consideration." It contends—still relying on *Clemmons*—the appellate panel erred by ignoring the controlling nature of the medical impairment ratings of twelve percent to the back from Math and thirteen percent to the whole person from McHenry. We do not discount the importance of medical impairment ratings given by the professionals treating an individual claimant, particularly when the commission finds those professionals to be credible. However, both the court of appeals and Diversified have overread *Clemmons*.

In *Clemmons*, the claimant underwent back surgery but continued to experience pain in his neck and back as well as difficulty balancing and walking. 420 S.C. at 285, 803 S.E.2d at 269. Two doctors and a physical therapist assigned him seventy-one, ninety-one, and ninety-nine percent impairment ratings to the spine. 420 S.C. at

---

[3] Diversified also argues the appellate panel erred by finding Paulino's loss of use to his back was greater than fifty percent without specifying the exact percentage of the loss because in *Clemmons* this Court remanded to the commission for a new hearing in part to determine the percentage loss of use. However, there is nothing in subsection 42-9-30(21) that requires the commission to make a finding as to the exact percentage of a claimant's loss of use of his back when the loss is fifty percent or more. The statute simply establishes a rebuttable presumption a claimant is permanently and totally disabled "where there is fifty percent or more loss of use of the back." S.C. Code Ann. § 42-9-30(21). In *Clemmons*, we remanded to the commission primarily for its determination of whether the employer could rebut the presumption of total disability; we left no room for the commission to find less than a fifty percent loss of use to the back. 420 S.C. at 289-90, 803 S.E.2d at 272. Further, in *Linen v. Ruscon Construction Co.*, 286 S.C. 67, 332 S.E.2d 211 (1985), this Court affirmed the appellate panel's finding of over fifty percent loss of use to the back even though the panel did not provide an exact percentage. 286 S.C. at 69, 332 S.E.2d at 212. Thus, the appellate panel was not required to assign a precise disability rating to Paulino's back.

285-86, 803 S.E.2d at 269-70. The doctor that assigned him a seventy-one percent rating to his spine assigned a twenty-five percent rating to the whole person. 420 S.C. at 285, 803 S.E.2d at 269. The claimant also presented medical testimony from a separate doctor that the claimant lost more than fifty percent functional capacity to his back. 420 S.C. at 286, 803 S.E.2d at 270.

The court of appeals' and Diversified's reliance on *Clemmons* is misplaced because this case is distinguishable. Four doctors testified in that case the claimant suffered at least a fifty percent impairment rating to his spine, including two doctors who assigned ratings of over ninety percent. There was—we stated—"*no* evidence" to the contrary. 420 S.C. at 288, 803 S.E.2d at 271. Importantly, we did not hold a claim for benefits under section 42-9-30 must be proved by medical evidence, nor did we hold that medical evidence is conclusive. Instead, we explained that the record must be considered as a whole. 420 S.C. at 287, 803 S.E.2d at 270 (citing *Adams*, 341 S.C. at 404, 535 S.E.2d at 125).[4]

In many other cases, South Carolina courts have looked to additional evidence beyond medical professionals' impairment ratings to affirm the appellate panel's finding of loss of use to the back. *See, e.g.*, *Linen*, 286 S.C. at 68-70, 332 S.E.2d at 211-212 (affirming finding of fifty percent loss of use of the back based on other evidence in the record despite doctors assigning impairment ratings of 15% and 20%-30%); *Lyles v. Quantum Chem. Co. (Emery)*, 315 S.C. 440, 445, 434 S.E.2d 292, 295 (Ct. App. 1993) (affirming finding of a fifty-eight percent disability to the back based on testimony from the claimant); *Sanders v. MeadWestvaco Corp.*, 371 S.C. 284, 291-93, 638 S.E.2d 66, 70-71 (Ct. App. 2006) (affirming finding of forty percent disability to the back based on claimant's testimony despite a doctor assigning an impairment ratings of eighteen percent to the lumbar spine); *c.f. Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 340, 513 S.E.2d 843, 846 (1999) ("[M]edical testimony should not be held conclusive irrespective of other evidence." (quoting *Ballenger v. S. Worsted Corp.*, 209 S.C. 463, 467, 40 S.E.2d 681, 682-83 (1946))).

---

[4] The court of appeals correctly recognized that, "Although medical evidence 'is entitled to great respect,' the Commission is not bound by the opinions of medical experts and may disregard medical evidence in favor of other competent evidence in the record." *Paulino*, 2022-UP-096, at *2 (quoting *Burnette v. City of Greenville*, 401 S.C. 417, 427, 737 S.E.2d 200, 206 (Ct. App. 2012)).

In *Linen*, the claimant received two doctors' impairment ratings of 15% and 20%-30%. 286 S.C. at 68-69, 332 S.E.2d at 212. The appellate panel awarded compensation for total and permanent disability for a fifty percent or more loss of use to the back. 286 S.C. at 68, 332 S.E.2d at 211. On appeal, this Court considered the testimony of the two doctors who assigned ratings, the claimant's testimony, and a vocational expert's testimony. *Id*. The doctors highlighted the claimant's physical limitations, including difficulty walking and bending down. 286 S.C. at 68-69, 332 S.E.2d at 212. The claimant testified about his severe lower back pain and limited standing and sitting capabilities, and he estimated a seventy-five percent loss of use to his back. 286 S.C. at 69, 332 S.E.2d at 212. The vocational expert testified that the claimant was not employable. *Id*. We affirmed because "the finding of fifty percent loss of use of the back [was] supported by substantial evidence." *Id*.

The "substantial evidence" standard of review requires courts to balance the evidence to determine whether it "would allow reasonable minds to reach the conclusion that the [commission] reached . . . ." *Clemmons*, 420 S.C. at 287, 803 S.E.2d at 270 (citation omitted). When considering the record as a whole—both medical evidence and non-medical evidence—if substantial evidence supports the commission's findings, the court must affirm.

Here, there is substantial evidence to support the commission's determination. Specifically, we discuss (1) the finding by the single commissioner about Paulino's "poor surgical result," (2) Paulino's functional capacity evaluation, and (3) Paulino's testimony and statements made to his doctors.

### i.      Surgical Result

The appellate panel found, "Claimant's impairment ratings are very low based on the poor surgical result." The court of appeals focused on this finding, stating "no evidence in the record indicates a 'poor surgical result,'" and "we find the Commission erred in adopting this medical opinion of the single commissioner." *Paulino*, 2022-UP-096, at *1. We believe the court of appeals' emphasis on this finding was misplaced, as we read the statement to be more of an explanatory comment than a medical finding. Nevertheless, we discuss the evidence regarding whether Paulino's surgery alleviated his back impairment.

First, McHenry's surgery report does not indicate that Paulino's spine surgery was "a success," as the court of appeals wrote. *Paulino*, 2022-UP-096, at *1. McHenry never used the word "success." Notably, at the *same appointment* where McHenry reviewed the MRI results that indicated no significant impingement remained, McHenry wrote that Paulino "continues to do much worse than we think he should at this point." We read McHenry's notes regarding the MRI results to mean only that a second surgery would not alleviate Paulino's symptoms, which is not evidence of the first surgery being a success.

In addition, although McHenry stated Paulino was not a candidate for a second surgery, the record before the commission was replete with notes from McHenry, Math, and Patel indicating Paulino did not recover well from his first surgery. For example, McHenry reported "patient has just not done as expected in the post-op period" and that Paulino "[c]ontinues not to do well overall." At Paulino's final physical therapy appointment, Patel noted he had "not progressed as anticipated and pain has been a limiting factor." Math stated Paulino's clinical progression was "[g]radually worsening."

Finally, McHenry and Math prescribed heavy pain medications to Paulino at his appointments after the surgery. The appellate panel recognized this when it found, "based on the medication list alone, Claimant has suffered a major disability." Paulino was also treated with an injection to his back after he reported the medications were not helping adequately. All of this evidence supports the appellate panel's explanation that the impairment ratings given by Paulino's doctors were low because of his "poor surgical result."

### ii.    Functional Capacity Evaluation

The appellate panel found, "Although Claimant was found to have completed his functional capacity evaluation dated November 20, 2017 at a medium demand level, various issues in completing the evaluation were noted." The notes from the functional capacity evaluation indicate Drews observed Paulino performing with significant issues during almost every exercise. For example, for an exercise that called for Paulino to walk for thirty minutes, Drews noted, "Aerobic capacity was unable to be determined because of intense pain and antalgic gait on treadmill." Drews wrote that Paulino "was unable to tolerate the 5% grade and the minimum 2.0mph walking speed to complete test." He was able to walk only at 1.5mph for twenty minutes "with significant compensations." For an exercise that called for

Paulino to stand still for thirty minutes, Drews wrote: "Frequent weight shift onto LEFT side, slow increase in pain reported in low back and numbness down R LE foot as stand progressed." The evaluation consisted of fourteen parts, and Drews documented various complications and pain for nearly every exercise.

Despite the extensive list of complications, the court of appeals focused on the conclusion that Paulino could perform medium work duties. *See Paulino*, 2022-UP-096, at *1 ("Claimant's physical therapist opined that he could perform medium work duties that involved flexing and rotating his lumbar spine."). However, after Math reviewed the functional capacity evaluation, she recommended Paulino not return to work without proper conditioning. Additionally, Math assigned permanent physical limitations of *light* work duties and no lifting greater than ten pounds. Scott—the doctor contacted by Paulino's attorneys—also reviewed the functional capacity evaluation report and concluded, "within a reasonable degree of medical certainty," that Paulino "would not be able to sustain the workplace activities indicated by the FCE for a full eight hour day, particularly not on a day-after-day basis." The complications Paulino experienced during the evaluation, along with the doctor's disagreement with Drews's recommendation, are evidence that support the appellate panel giving less weight to the "medium" work duties recommendation assigned at Paulino's functional capacity evaluation.

Further, Paulino's testimony indicates the results of the functional capacity evaluation might be incomplete. Paulino testified he was in "a lot of pain" while taking the evaluation and that he needed help getting out of bed for three days following the exam. Paulino testified the evaluation took only about two hours and twenty minutes, and he would not be able to take the same evaluation the very next day or do the evaluation for a full workweek.

### iii. Paulino's Testimony and Statements to His Doctors

The court of appeals held that "because Claimant failed to rebut Dr. Math's twelve-percent impairment rating to his back with medical evidence, we find the Commission's findings of fact adopted from the single commissioner's order are inconclusive." *Paulino*, 2022-UP-096, at *2. The court of appeals explained:

> Because Claimant did not testify as to the character of his back injury, the specific ways his back injury prevents him

from leading a normal life, the limitations the back injury places on his physical activities, and because he failed to present evidence of a . . . back impairment rating greater than twelve percent, we find substantial evidence does not support the Commission's finding as to the scheduled-member.

*Id.*

While Paulino did not testify extensively at the hearing about how the injury affected him, there is other evidence in the record from which it could be inferred. For example, at Paulino's December 6, 2017 appointment with Math, she wrote: "[Paulino] reports that his pain is activity limiting. He feels that his pain is not adequately controlled. Patient was concerned that he is not able to participate in his daily activities due to the pain." Paulino also told his doctors that he was experiencing pain in his back at every appointment. There is no indication in the medical records that the doctors who treated Paulino were skeptical in any way about what he told them. The single commissioner also did not question Paulino's credibility when he testified at the hearing. Instead, the single commissioner found that Paulino "was honest and clear in his testimony."

All of this evidence supports the appellate panel's conclusion that Paulino suffered a greater than fifty percent loss of use to his back. The medical records overwhelmingly document Paulino's struggles after surgery, with reports indicating his poor recovery and ongoing pain. The functional capacity evaluation highlighted Paulino's challenges in performing basic tasks. Paulino's own testimony, although mainly concerning his background and work history, corroborated his ongoing pain and activity limitations he consistently reported to his doctors.

We acknowledge it is a close call whether there is substantial evidence to support the commission's finding that Paulino suffered a more than fifty percent loss of use to his back in light of two impairment ratings below twenty percent. But our review is limited to a determination of whether the evidence as a whole "would allow reasonable minds to reach the conclusion that the [commission] reached . . . ." *Clemmons*, 420 S.C. at 287, 803 S.E.2d at 270 (citation omitted). In light of all the evidence presented to the commission, we hold that the appellate panel's decision was supported by substantial evidence.

### IV.    Conclusion

For these reasons, we reverse the court of appeals and reinstate the appellate panel's order.

**REVERSED.**

**BEATTY, C.J., KITTREDGE, JAMES and HILL, JJ., concur.**