723 S.E.2d 805

Alexander MICHAU, Employee, Claimant, Appellant,

v.

GEORGETOWN COUNTY, Self–Insured Employer, through, SOUTH CAROLINA COUNTIES WORKERS COMPEN-SATION TRUST, Defendants, Respondents.

No. 27064.

Supreme Court of South Carolina.

Heard Oct. 6, 2011.

Refiled Feb. 1, 2012.

Raymond C. Fischer and William Stuart Duncan, both of Georgetown, for Appellant.

Kirsten L. Barr and Jamie C. Guerrero, both of Mt. Pleasant, for Respondents.

Chief Justice TOAL.

Appellant, Alexander Michau (Employee), appeals a ruling by the Appellate Panel of the South Carolina Workers' Compensation Commission (Commission) denying Employee's claim for repetitive trauma injuries to his shoulders. Specifically, Employee challenges the Commission's interpretation and application of section 42–1–172 of the South Carolina

Code. Because the Commission erred in admitting a medical opinion that was not stated to a reasonable degree of medical certainty, as required under section 42–1–172, we reverse and remand.

## FACTS/PROCEDURAL HISTORY

Employee alleges he sustained a compensable repetitive trauma injury to both of his shoulders on September 29, 2008, and reported it to his supervisor that same day. Prior to this date, Employee did not report any work-related problems with his arms to Georgetown County (Employer) although he sought outside treatment. Employee seeks reimbursement for medical expenses and an award of temporary total disability benefits.

Employee is in his sixties and has twice worked for Employer. When he returned to work for Employer in 1988, he was initially employed as a truck driver, but eventually switched to operating a motor grader, a device used to grade and smooth dirt and gravel on roads. Employee usually worked ten hours per day, spending about eight hours actually operating the motor grader.

Employee testified he operated two types of motor graders during his tenure with Employer. The original motor graders had manual levers while newer models were equipped with hydraulics. After Employer purchased the newer model, Employee operated it for approximately three years without any incident, admitting that "it was a good machine."[1] Employee did not file a workers' compensation claim until he began operating the new, non-vibrating machine, but he testified that the old machine did vibrate.

In 1997, Employee first sought medical treatment with Dr. Benjamin Lawless for problems relating to his arms and shoulders. Dr. Lawless's medical reports indicate that Employee complained of arthritis-related symptoms involving pain and swelling in his hands and redness in his joints.[2] In

---

1. Employee elaborated further, "I mean, it was good. I mean, I had a steering wheel that, that I pulled to me, and I had my levers on each side. It was right there. I mean, it was just—it was just easy as— almost as eating ice cream."

2. In June 2001, Employee complained of arthritic symptoms in his arms, and Dr. Lawless's medical report indicates he suspected Employ-

August 2005, Dr. Lawless referred Employee for a total body bone scan, which also found evidence of rheumatoid arthritis. Consequently, he referred Employee to a rheumatologist, Dr. Mitch Twinning, who examined Employee on May 24, 2006, and diagnosed him with rheumatoid arthritis. Employee continued treatment with Dr. Lawless for this disease until June 2006.

On December 1, 2006, Dr. Michael Bohan, an orthopaedic specialist, began treating Employee and reported that x-ray data of the left shoulder "show[ed] rather significant degenerative arthritis of the glenohumeral joint as well as the AC joint." Employee eventually underwent surgery on his left shoulder, and on November 21, 2008, Dr. Bohan issued a letter to Employee's attorney stating:

> I do believe *within a reasonable degree of medical certainty* that these repetitive work activities over the years of his shoulders [sic] have resulted in his severe osteoarthritis of both shoulders.

(emphasis added).

Seeking independent verification of Employee's claim, Employer engaged Dr. Chris Tountas, a specialist in the treatment of arthritis, to perform a medical evaluation of Employee. Dr. Tountas opined:

> Based on the history, physical examination, objective findings, and review of available records, it is my *opinion* that [Employee] has had a long history of arthritis involving multiple joints with diagnosis of rheumatoid arthritis.... There is no indication from the job description or his employment that would relate any of his shoulder problems to his work driving a road grader. In my opinion this is a natural progression of a preexisting condition. The preexisting condition in my opinion would ultimately result in a need for treatment and the recent surgery.

(emphasis added).

The Commission denied Employee's claim on the grounds that "the greater weight of the medical evidence reflects

---

ee suffered from carpal tunnel syndrome. In July and November 2001, Employee followed up with Dr. Lawless, again complaining of pain in his arms and hands.

[Employee's] upper extremity and shoulder problems are related to pre-existing osteoarthritis and/or rheumatoid arthritis and not caused or aggravated by his employment with Georgetown County." In reaching this conclusion, the Commission considered all of the medical evidence including Dr. Tountas's report. Employee disputes the admissibility of Dr. Tountas's report under South Carolina Code section 42–1–172 because it was not stated "to a reasonable degree of medical certainty." Employee argues that without this evidence, the remaining competent evidence would support Employee's claim of sustaining a compensable repetitive trauma injury.

### ISSUES

I. Whether section 42–1–172(C) governs the admissibility of evidence in a workers' compensation claim.

II. Whether the Commission properly construed and applied section 42–1–172 in admitting Dr. Tountas's statement.

### STANDARD OF REVIEW

The South Carolina Administrative Procedure Act (APA) governs appeals from the decisions of the Commission. S.C.Code Ann. § 1–23–380 (Supp.2010); *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Under the APA, an appellate court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but it may reverse when the decision is affected by an error of law. S.C.Code Ann. § 1–23–380(5).

### ANALYSIS

### I. Admissibility of Evidence under section 42–1–172

█ Employer contends that South Carolina Code section 42–1–172 does not govern the admissibility of evidence in a workers' compensation claim involving a repetitive trauma injury. S.C.Code Ann. § 42–1–172 (Supp.2010). We disagree.

Specifically, Employer argues that admissibility of evidence in this case is governed *solely* by section 1–23–330, which provides that "in contested cases ... [i]rrelevant, immaterial or unduly repetitious evidence shall be excluded." S.C.Code

Ann. § 1–23–330 (2005). However, Employer cites no supporting authority for this interpretation.

In our view, section 1–23–330 establishes a minimum standard that applies generally, but not exclusively. On the other hand, section 42–1–172(C) expressly creates an additional heightened standard for repetitive trauma injury cases. Specifically, it requires "medical evidence," in the form of "expert opinion or testimony [to be] stated to a reasonable degree of medical certainty." S.C.Code Ann. § 42–1–172(C). Indeed, section 42–1–172(C) commands that the "[c]ompensability of a repetitive trauma injury must be determined *only* under the provisions of this statute." *Id.* (emphasis added); *see also Murphy v. Corning*, 393 S.C. 77, 84, 710 S.E.2d 454, 458 (Ct.App.2011) ("[T]he compensability of a repetitive trauma injury must be determined by the Commission under the provisions of [section] 42–1–172. . . . [and] the Commission erred by failing to address [section] 42–1–172.").

Thus, in repetitive trauma injury cases such as this, section 42–1–172 governs the admissibility of medical evidence.

## II. Commission's Construction and Application of section 42–1–172

■ Employee argues that the Commission incorrectly construed section 42–1–172 by admitting Dr. Tountas's medical evidence, as it was not stated "to a reasonable degree of medical certainty."[3] We agree.

Section 42–1–172 provides:

An injury is not considered a compensable repetitive trauma injury unless a commissioner makes a specific finding of fact by a preponderance of the evidence of a causal connection that is established by medical evidence. . . . As used in this section, "medical evidence" means expert opinion or testimony stated to a reasonable degree of medical certainty,

---

3. Specifically, the Commission concluded:

Subsection (C) merely defines what medical evidence is necessary to establish causation of a repetitive trauma claim. This provision of the Act could not have been intended to require every medical report submitted by the parties be stated within a reasonable degree of medical certainty.

documents, records, or other material that is offered by a licensed and qualified medical physician.

S.C.Code Ann. § 42–1–172.

 The plain reading of the statute requires that "opinion or testimony" must be "stated to a reasonable degree of medical certainty." *Id.* In contrast, "documents, records, or other material" is not similarly modified. *Id.* As this Court has recognized, the "use of the word 'or' in a statute 'is a disjunctive particle that marks an alternative.'" *K & A Acquisition Group, LLC v. Island Pointe, LLC,* 383 S.C. 563, 580, 682 S.E.2d 252, 261 (2009). Here, the legislature intentionally used "or" after a series of commas to expand the definition of "medical evidence" beyond "opinion or testimony." S.C.Code Ann. § 42–1–172. This Court has said that words should be given "their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *State v. Sweat,* 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010) (citation omitted). Because the statute does not require that "documents, records, or other material" be "stated to a reasonable degree of medical certainty," we will not expand its plain meaning or interpolate this requirement.[4] *Id.*

Consequently, we must address whether Dr. Tountas's statement constitutes an "opinion or testimony" that must be "stated to a reasonable degree of medical certainty." S.C.Code Ann. § 42–1–172. Employer contends that Dr. Tountas's letter represents "documents, records, or other material" that need not be stated to a reasonable degree of medical certainty. The Commission agreed with Employer and pointed out that a contrary interpretation and application of the statute would require this Court to ignore eleven years of

---

4. Legislative history also supports this interpretation of section 42–1–172. Had the General Assembly intended to require "documents, records, or other material" be "stated to a reasonable degree of medical certainty," it would have left the April 4, 2007 amended and adopted Senate version of this section intact. This version unambiguously provides:

> As used in this title, "medical evidence" means expert opinion, expert testimony, documents, or other material that is offered or stated to a reasonable degree of medical certainty by a licensed health care provider.

S. 332, reprinted in 4 Senate Journal, South Carolina Regular Session, 2007, at 1662. However, the legislature did not adopt this language.

Employee's prior medical history and reports merely because they do not contain the magic phrase "within a reasonable degree of medical certainty." We note that Employee does not challenge the other admitted medical evidence, and therefore the only issue we decide here is the admissibility of Dr. Tountas's statement.

While we recognize that medical "records" will often also contain physicians' opinions, in this instance, Dr. Tountas was not Employee's treating physician, and Employer specially sought out Dr. Tountas to evaluate Employee and issue a medical "opinion" to decide the compensability of Employee's claim. Under these facts, Dr. Tountas's letter does not constitute "documents, records, or other material," but is an "opinion or testimony" that must be "stated to a reasonable degree of medical certainty." *Id.* § 42-1-172. We stress, however, that our opinion is a narrow one limited to medical evidence given by expert opinion or testimony as provided for in section 42-1-172 and the facts of this case. *See id.* ("*As used in this section,* 'medical evidence' means....") (emphasis added).

▮ In the alternative, it has also been argued that if Dr. Tountas's statement constitutes an "opinion or testimony," the requirement of section 42-1-172 applies only to claimants and not defendants. The statutory language makes no such distinction, so we decline to adopt this forced construction. *See Sweat,* 386 S.C. at 350, 688 S.E.2d at 575 (finding words should be given "their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.") (citation omitted).

Thus, we reverse the Commission's decision to admit Dr. Tountas's medical opinion.

### CONCLUSION

For the foregoing reasons, we reverse and remand the case to the Commission to decide whether the remaining competent evidence supports Employee's claim of sustaining a compensable, repetitive trauma injury.

**REVERSED AND REMANDED.**

PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.