# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Dale Brooks, Employee, Appellant,

v.

Benore Logistics System, Inc., Employer, and Great American Alliance Insurance Company, Carrier, Respondents.

Appellate Case No. 2018-002087

Appeal From The Workers' Compensation Commission

Opinion No. 5891
Submitted November 1, 2021 – Filed January 19, 2022

## REVERSED AND REMANDED

Robert T. Usry, of Holland & Usry, PA, of Spartanburg, for Appellant.

Daniel Barry Eller and William Franklin Childers, Jr., both of Eller Tonnsen Bach, of Greenville, for Respondents.

**HILL, J.:** Dale Brooks brought this workers' compensation claim seeking benefits for a repetitive trauma injury to his lower back and right leg. A single commissioner awarded him benefits, but the Full Commission reversed, finding Brooks failed to prove his job was repetitive. We reverse and remand.

## I. Facts

Brooks began working as a "switcher" truck driver for Benore Logistics Systems, Inc. in June 2016. His job consisted of driving a "switcher truck" to move trailers to various points in a yard at the BMW manufacturing plant. He would drive the switcher truck across the yard and back it up to a trailer, hook it to his truck, and drive the trailer to another location where he would unhook it. The process required Brooks to climb up three steps to access the cab of the truck (which he testified he had to stoop to enter), bend his body to position it in the seat, bend and twist his body while seated to back up the truck to the trailer, exit the cab by a rear door to access a platform where he would then have to bend to hook or unhook the trailer, climb off the platform and close the rear trailer doors, reenter the cab, and return to his seat to drive the truck. Brooks had to switch forty-five to sixty trailers each twelve-hour shift, sometimes getting in and out of the truck 225 times. Brooks testified he often had to switch sea containers, which were far more demanding physically because they were more difficult to open, higher off the ground, and had a ceramic seal that had to be opened with bolt cutters. Sometimes he also had to stoop underneath the sea container and pull pins to slide the axle.

In January 2017, Brooks began experiencing pain in his back and leg. He went to the emergency room and was discharged with the recommendation to follow up with an orthopedist. He was then seen by Benore's doctor at WorkWell, reporting that his symptoms had begun several weeks before when he felt sharp low back pain while stepping into his truck at work. At Brooks' follow up appointment, the WorkWell doctor ordered an MRI. This MRI was never completed because two minutes after Brooks left the appointment, Benore's adjuster called WorkWell and advised that Brooks' claim had been denied.

On May 1, 2017, Brooks went to Dr. Eric Loudermilk, whose notes state:

> He presents today complaining of pain in his back and leg which has been present since around January 3, 2017. He runs a switcher truck. He apparently works as a driver and he climbs up and down some stairs approximately 150 times per day switching trucks. He apparently does at a minimum of 30 trucks per shift. This involves switching trucks in and out multiple times during the day, opening and closing doors, bending and stooping, and climbing ladders. Around January 3, 2017, he developed burning

pain in his legs. Several days later, he developed severe pain in his lower back which radiated down his right leg all the way to the calf and right foot.

After obtaining an MRI, Dr. Loudermilk diagnosed Brooks with right lower extremity radiculopathy secondary to a L4–L5 lumbar disk protrusion and recommended a non-surgical course of treatment. Brooks' lawyer sent Dr. Loudermilk a questionnaire that included the following two questions:

> A. Did the repetitive activities of Dale's job, including but not limited to going up and down stairs, getting in and out of a truck, opening and closing doors, bending and stooping, and climbing ladders, most probably cause low back pain with right leg radiculopathy?

> B. Did the work injuries from repeated work activities above cause an L4–5 disc protrusion shown on Dale's MRI of 6.27.17?

Dr. Loudermilk answered "yes" to both questions.

This questionnaire and other evidence were presented at the hearing before the single commissioner, where Brooks was the sole witness. Benore presented an ergonomics report it had procured that opined Brooks' job duties entailed no enhanced risk of injury to his back. The single commissioner found Brooks proved he had suffered a repetitive trauma injury and awarded him benefits.

The Full Commission disagreed. Relying on the ergonomics report, it concluded Brooks had not proven his job duties were repetitive and denied him benefits. Brooks now appeals to us.

## II. <u>Standard of Review</u>

We must affirm the factual findings of the Commission if they are supported by substantial evidence. S.C. Code Ann. § 1-23-380(5) (2005 & Supp. 2020); *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 132–33, 276 S.E.2d 304, 305 (1981). Like any other finder of fact, the Commission may not rest its findings on speculation or guesswork. *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 339, 513 S.E.2d 843, 845 (1999)

("Workers' compensation awards must not be based on surmise, conjecture or speculation."). Instead, the Commission must anchor its ruling on evidence substantial enough to provide a reasonable basis for its findings. *Hutson v. S.C. State Ports Auth.*, 399 S.C. 381, 387, 732 S.E.2d 500, 503 (2012). As relevant here, we may reverse the Commission's decision if its findings are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record"; the result of an error of law; or arbitrary, capricious, or an abuse of discretion resulting in prejudice to Brooks' substantial rights. S.C. Code Ann. § 1-23-380(5).

## III. Analysis

### A. *The standard for recovery for a repetitive trauma injury*

Section 42-1-172 of the South Carolina Code (2007) is the exclusive method for determining the compensability of repetitive trauma injuries. *Michau v. Georgetown County ex rel. S.C. Cntys. Workers Comp. Tr.,*, 396 S.C. 589, 594, 723 S.E.2d 805, 807 (2012). The relevant part of § 42-1-172 provides:

> (A) "Repetitive trauma injury" means an injury which is gradual in onset and caused by the cumulative effects of repetitive traumatic events. Compensability of a repetitive trauma injury must be determined only under the provisions of this statute.

> (B) An injury is not considered a compensable repetitive trauma injury unless a commissioner makes a specific finding of fact by a preponderance of the evidence of a causal connection that is established by medical evidence between the repetitive activities that occurred while the employee was engaged in the regular duties of his employment and the injury.

> (C) As used in this section, "medical evidence" means expert opinion or testimony stated to a reasonable degree of medical certainty, documents, records, or other material that is offered by a licensed and qualified medical physician.

(D) A "repetitive trauma injury" is considered to arise out of employment only if it is established by medical evidence that there is a direct causal relationship between the condition under which the work is performed and the injury.

The leading case construing § 42-1-172 tells us compensability of a repetitive trauma injury requires a specific finding of fact, made by the greater weight of the evidence, of a direct causal relationship, established by medical evidence, between the injury and a repetitive act occurring in the course of the regular duties of employment. *Murphy v. Owens Corning*, 393 S.C. 77, 85, 710 S.E.2d 454, 458 (Ct. App. 2011).

B. *The single commissioner's ruling*

In ruling Brooks was entitled to compensation for a repetitive trauma injury, the single commissioner's order tracked § 42-1-172 and *Murphy* precisely, stating:

> 14. . . . Based on the preponderance of the evidence before me in this case, I must conclude that [Brooks] has suffered a compensable repetitive trauma injury to his low back affecting his right leg.
>
> A. I find a direct causal relationship between the repetitive acts and the employment.[1]
> B. This finding is based on the entire record.

C. *The Full Commission's ruling*

---

[1] In making this statement, the single commissioner was following *Murphy* to a fault. *Murphy* states, "Compensability under section 42-1-172 requires a specific finding of fact, by the preponderance of the evidence, of a direct causal relationship, established by medical evidence, between the repetitive act *and the employment*." 393 S.C. at 85, 710 S.E.2d at 458 (emphasis added). We are certain the emphasized phrase was a scrivener's error and should read "and the injury."

The Full Commission reversed, finding § 42-1-172 requires "a two-part analysis a claimant must meet in order to meet his burden of proving a compensable repetitive trauma injury." The Commission went on to describe the two-part test:

> First, there must be medical evidence establishing a causal connection between the "condition under which the work is performed and the injury." § 42-1-172(D). Additionally, there is an independent requirement that the Commissioner find by a preponderance of evidence that the claimant's specific job activities are repetitive. § 42-1-172(B).

The two-part test announced by the Full Commission is unfaithful to *Murphy* and misreads § 42–1–172. The plain language of § 42–1–172 does not support a two-part construct. The intent of the statute is to require a commissioner to make a specific factual finding that medical evidence establishes a causal connection between the repetitive duties of claimant's employment and the injury. The single commissioner did just that. In insisting the statute also requires the commissioner to make a separate factual finding that the employee's job duties were repetitive, the Full Commission sees something in the statute that is not there. Setting such an extra hurdle violates fundamental rules of statutory construction. *Paschal v. State Election Comm'n*, 317 S.C. 434, 437, 454 S.E.2d 890, 892 (1995) (court may not resort to subtle or forced construction to expand or limit a statute's scope).

The effect of the Full Commission's two-part formula would be to force claimants to offer expert testimony that their job duties were repetitive. But that would not be enough, for there is no question § 42-1-172 requires that the causal connection between the work and the injury must be established by "medical evidence," which "means expert opinion or testimony stated to a reasonable degree of medical certainty, documents, records, or other material that is offered by a licensed and qualified medical physician." § 42-1-172(C).

*Michau* illustrates why the ergonomics report here is not competent medical evidence under § 42-1-172. *Michau* held § 42-1-172 mandates that to be admissible as "medical evidence" in repetitive trauma cases, the doctor's opinion must reflect that it is stated to a reasonable degree of medical certainty, something an ergonomics report cannot do. *Michau*, 396 S.C. at 595–96, 723 S.E.2d at 808 (quoting § 42-1-172).

We are certain that in drafting § 42-1-172, the General Assembly understood, as we do, that medical doctors are capable of diagnosing the cause of an injury. Doctors do not require, any more than the statute does, an ergonomics report to diagnose the cause of a repetitive trauma injury. The Full Commission therefore committed an error of law in adding an improper, redundant condition to § 42-1-172.

The Full Commission also committed a clear error in finding the ergonomics report concluded Brooks' job duties were not repetitive. The report makes no such statement and does not even use the word "repetitive." A fair reading of the report reveals it merely opined Brooks' duties did not, in general, expose him to an enhanced risk of injury to his back or legs. Recovery under § 42-1-172 is not limited to work injuries that an ergonomics report deems statistically likely.

It is obvious to us the Full Commission substituted the opinion of the ergonomics report for the considered medical opinion, made to a reasonable degree of medical certainty, of Dr. Loudermilk. This was reversible error. *See Herndon v. Morgan Mills, Inc.*, 246 S.C. 201, 216, 143 S.E.2d 376, 384 (1965) ("[W]here the subject is one for experts or skilled witnesses alone and concerns a matter of science or specialized art or other matters of which a layman can have no knowledge, the unanimous opinion of medical experts on particular subjects may be conclusive, even if contradicted by lay witnesses.").

The Full Commission tried to discredit Dr. Loudermilk by claiming his "opinions assume the job is sufficiently repetitive," because he was "never asked whether [Brooks'] job activities are sufficiently repetitive" and "there is no evidence Dr. Loudermilk ever reviewed a job description for a 'switcher'". These statements from the Full Commission's order are based on fuzzy logic (they use the classic fallacy known as appeal to ignorance) and are refuted by the record. Dr. Loudermilk did not assume the duties were repetitive; he gave his expert opinion that, to a reasonable degree of medical certainty, Brooks' repetitive job duties caused his injury. In reaching that opinion, he well knew Brooks' job duties, as he recorded them in his notes and reaffirmed them in answering the questionnaire. Nothing in § 42-1-172 prevents a medical doctor from using his expert evaluation of patient history in forming his professional opinion, and we expect the medical community would be surprised to learn the Full Commission believes this time-honored practice always entails an unwarranted assumption. More to the point, Dr. Loudermilk avowed the ergonomics report—which cataloged Brooks' job duties—did not alter his opinion.

While the Commission may refuse to accept even uncontradicted medical evidence, it must base its refusal on a valid reason supported by competent evidence in the record. Otherwise, the refusal is arbitrary and capricious and warrants reversal. *Baker v. Graniteville Co.*, 197 S.C. 21, 28–29, 14 S.E.2d 367, 371 (1941); *see also Tiller*, 334 S.C. at 340, 513 S.E.2d at 846 ("[W]hile medical testimony is entitled to great respect, the fact finder may disregard it if there is other competent evidence in the record."); 12 Lex K. Larson, *Larson's Workers' Compensation Law* § 128.03(4) at 128-13 (Matthew Bender, Rev. Ed. 2014) ("If a Commission wishes to enter an award contradicting the medical testimony, it must take care to show in the record the valid competing evidence or considerations that impelled it to disregard the medical evidence. Failure to do so may lead to reversal both of denials and awards of compensation."); *Cf. Burnette v. City of Greenville*, 401 S.C. 417, 427–28, 737 S.E.2d 200, 206 (Ct. App. 2012). The ergonomic report was not competent evidence of causation in this § 42-1-172 case. Therefore, because all of the competent evidence supports Brooks' claim, Brooks is entitled to compensation as a matter of law. *See Clemmons v. Lowe's Home Centers, Inc.-Harbison*, 420 S.C. 282, 289, 803 S.E.2d 268, 271 (2017); *Herndon*, 246 S.C. at 209–10, 143 S.E.2d at 381.

To repeat, because the only rational inference that can be drawn from the record is that Brooks met his burden of proving he suffered a repetitive trauma injury arising out of his employment as defined by § 42-1-172, we reverse the ruling of the Full Commission and remand for calculation of benefits.

**REVERSED AND REMANDED.**[2]

**KONDUROS and HEWITT, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.